No. 6387.

ABNER TAYLOR *v.* R. M. HALL, COMMISSIONER GENERAL LAND OFFICE.

1. MANDAMUS—COMMISSIONER OF LAND OFFICE.—In a proceeding by mandamus to compel the delivery of patents, brought by the contractor, for lands earned upon the contract for building the new capitol, without the payment of patent fees, the State is a necessary party; and, as the State can not be sued without her consent, such suit against the Commissioner of the General Land Office was properly dismissed.

APPEAL from Travis.    Tried below before Hon. A. S. Walker.

This is a suit for mandamus instituted on the fourteenth day of September, 1887, by the appellant against the appellee, as Commissioner of the General Land Office, to compel the delivery to appellant of titles, already issued and signed by the Governor and Commissioner of the Land Office, in the form of patents to certain leagues of land, or to make and deliver to appellant other good and sufficient titles from the State thereto, without the payment by appellant of any patent or other fees; which titles appellant claimed he had a legal right to under his contract with the State, for having completed to the satisfaction of the authorities authorized to judge thereof for the State, a certain specified part of the new State capitol; setting forth the appropriation and survey of land for building the new State capitol; the making of a contract with Mathias Schnell to build the same under the law authorizing such contract; the substitution by assignment, etc., of appellant as the contractor instead of Mathias Schnell; the completion of the portion of the work entitling him to the installment of land which included the land the titles to which he sought by this proceeding; the acceptance of the work by the proper authorities; the issuance of the certificate of the Comptroller, countersigned by the Governor, authorizing the issuance of titles; the issuance and signature of patents therefor by the Commissioner of the General Land Office and the Governor; and the refusal of the Commissioner to deliver to the appellant said titles or to make him titles to said land except upon the payment of fees in addition to building the capitol; which appellant alleged the Commissioner had no legal authority to demand, wherefore he charged that the Commissioner was acting against the will of the State as expressed in the law authorizing this contract, and as expressed in the contract itself, in demanding such fees.

On the eleventh day of October, 1887, the appellee, by the Attorney General and Assistant Attorney General, filed a motion to make the Governor a party to this cause.    On the same day the appellee filed his answer, pleading to the jurisdiction of the court, demurring to appellant's petition, and pleading the general issue.    The motion of appellee to make the Governor a party to the case was overruled.

On the thirty-first day of October, 1887, the court sustained

the demurrer of appellee to appellant's petition, and appellant having declined to amend, the court rendered judgment dismissing the case, to which ruling and judgment appellant excepted, and has appealed. The additional facts are contained in brief of appellant.

*W. J. Swain* and *F. G. Morris,* for appellant: The law under which the contract for building the new State capitol was made, and the contract itself, having defined and enumerated the respective rights, duties and obligations of the parties and the considerations therefor, and said law and the contract made thereunder being specific with reference to the subject of building the capitol, they were the measure of all the rights of the parties to said contract, and excluded the right of either to call on the other to perform anything additional to the requirements of the contract. The contract and the law under which it was made having required the Commissioner to make titles to the appellant in consideration of his building the capitol building, the Commissioner had no right to require the appellant to pay any additional consideration, under the name of patent fees, or for any other purpose, as a condition precedent to the making and delivery of such titles as the contract called for.

The contract for building the new State capitol, a copy of which is made a part of the appellant's petition as an exhibit, was made between the State of Texas, through its proper officers, of the first part, and Mathias Schnell, of the second part. The parts thereof material to its construction, on the point involved in the preceding propositions, are as follows:

"2. The party of the second part, for and in consideration of the stipulations, covenants and agreements hereinafter made on behalf of the party of the first part, agrees, covenants and binds himself that he, the said party of the second part, will, in the very best workmanlike manner, style and method, construct, build, erect, complete and deliver to the State of Texas through its proper officers, a capitol building and appurtenances thereto, of the size and dimensions specified and set forth in the plans, specifications and detailed drawings," etc.

"4. And the said party of the first part, in consideration that the covenants, agreements and stipulations herein contained and set forth shall be fully and fairly kept and performed in every particular by the said party of the second part, in the time and manner therein stipulated, and to the entire satisfaction of

the party of the first part, through its proper officers, hereby agrees, covenants and binds itself to convey to said party of the second part the complete and perfect title to three million (3,000,000) acres of land situated in the State of Texas, and in the counties of Dallam, Hartley, Oldham, Deaf Smith, Palmer, Castro, Bailey, Lamb and Hockley, which said lands are fully described in a description thereof, printed under the direction of the Commissioner of the General Land Office, and maps of the same are on file in the general land office, the part and portion herein contracted to be conveyed beginning with survey number one and taken in numerical order, as the said party of the second part becomes entitled to conveyances of land at the several stages of construction, in the order hereinafter set forth, and excluding those heretofore sold or rejected, according to the said printed description and the said maps on file in the general land office. It is expressly agreed and understood by and between the parties hereto that the titles to the said lands shall be made to the party of the second part by the Commissioner of the General Land Office, on the certificate of the Capitol Building Commissioners, to be countersigned and approved by the Comptroller, as the work progresses and in installments as hereinafter set out.

"19. And it is hereby agreed by and between the parties hereto that when all claims for work done on the buildings and materials used have been paid off and discharged or releases filed, or bonds accepted, and the said twenty thousand dollars ($20,000) has been paid into the State treasury, the party of the second part shall receive, in the manner herein set forth, titles to the lands herein agreed to be conveyed in the numerical order heretofore mentioned at the successive stages of construction as follows, to wit." Here follows a description of the various stages of construction of the building and the per cent of the three million acres to be titled to Schnell on the completion of each of said stages of construction.

The appellant's petition alleged the execution of said contract; the substitution of appellant by assignments, and stipulations of the State through its proper officers with appellant; a compliance with the contract up to a completion of the stage of construction entitling him to the land for which he seeks a title by this suit; the issuing of the certificate of the Capitol Building Commissioners, countersigned and approved by the

Comptroller; the presentation of the same to the Commissioner of the General Land Office; a demand for titles, and the refusal to deliver titles because of appellant's refusal to pay patent fees. (Act February 10, 1879, Gen. Laws, p. 9; an act to provide for building a new State capitol, approved April, 18, 1879, secs. 10, 15, 16; Thomas v. McMahan, 4 Maine, 513; Crane v. Reeder, 22 Mich., 322; Isham's Admr. v. Bennington Iron Co., 19 Vt., 230; Felt v. Felt, 19 Wis., 208; Stockett, Admr., etc., v. Bird, Admr., 18 Md., 484; State ex rel. Sutfring v. Goetze, 22 Wis., 365; Watkins v. Wassell; 20 Ark., 411.)

The power vested in district courts by section 8 of article 5 of the Constitution of this State, to issue writs of mandamus, injunction, etc., includes the jurisdiction to issue writs of mandamus in all cases where, according to the common law as developed and elucidated by judicial decisions up to the time of the adoption of the present State Constitution such writ might have been properly issued; and it being clearly established by the great weight of the American authorities that the writ of mandamus will issue to compel the performance by all public officers of purely ministerial duties involving private rights (unless the chief executive be an exception to the rule) the district court had jurisdiction to issue the writ of mandamus in the case at bar.

The law, and the capitol contract made thereunder, constituted the Capitol Commissioners the exclusive judges of the completion of the various stages of the work on the capitol building, upon the completion of which the contractor was to have the title to certain installments of land. The certificate of the Capitol Commissioners, countersigned by the Comptroller, was the evidence upon which the Commissioner of the Land Office was required to act. The Commissioner of the Land Office had no discretion to exercise about the matter. (Sec. 8, art. 5, State Const.)

The following authorities hold that heads of departments of government are subject to be mandamused:

Auditors and State Treasurers: People v. State Auditors, 42 Mich., 422; Bryan v. Cattell, 15 Ia., 538; Lindsay v. Auditor, 3 N. P. Bush, Ky., 231; People v. State Treasurer, 4 Mich., 27; Swan v. Buck, 40 Miss., 268; State Bank v. Hastings, 15 Miss., 75; Reynolds v. Taylor, 43 Ala., 420; Johnson v. Reynolds, 44 Ala., 586; State v. Warner, 55 Wis., 271; Files v. State, 42 Ark., 233.

Mandamus against Attorney General: People v. Treman, 17 How. Pr., N. Y., 10.

Against Comptrollers: Nichols v. Comptroller, 4 Stewart & Parker, Ala., 156; State v. Gamble, 13 Fla., 9.

Against Secretaries of State: State v. Secretary of State, 33 Mo., 253; State v. Barker, 4 Kan., 379; State v. Wrolnowski, 17 La. Ann., 156; People v. Secretary of State and Treasurer, 58 Ill., 90; State v. Secretary of State, 32 La. Ann.

Against Governors of States: Tennessee R. R. Co. v. Moore, 36 Ala., 380; Middleton v. Low, 30 Cal., 596; Harpending v. Haight, 39 Cal., 189; Chumesero v. Potts, 2 Montana, 242; Cotton v. Ellis, 7 Jones, N. C., 545; State v. Chase, 5 Ohio St., 528; Magruder v. Swan, 25 Md., 212; Groom v. Givin, 43 Md., 572; State v. Moffit, 5 Ohio St., 362; Chamberlain v. Sibley, 4 Minn., 312.

*James S. Hogg,* Attorney General, and *R. H. Harrison,* Office Assistant, for appellee: The general laws in force at the time a contract is made and entered into is a part and parcel thereof, and the same must be construed and enforced with reference thereto. (R. R. Co. v. Gross, 47 Texas, 429; Robinson v. Magee, 9 Col., 84; Relfe v. Rundle, 103 U. S., 222; R. R. Co. v. Union Steamboat Co., 107 U. S., 100.)

The Commissioner of the General Land Office has no authority to issue and deliver patents to land to any one without first charging and collecting from the person entitled to receive the same the fees fixed by law for such work. (Rev. Stats., art. 2376; and especially act March 25, 1879, pages 61 and 62.)

In an action to compel the Commissioner of the General Land Office to issue and deliver patents to land the Governor of the State is a necessary party. (Rev. Stats., art. 3952; Kuechler v. Wright, 40 Texas, 672, 689; United States v. Commissioner, 5 Wallace, 563; The Secretary v. McGarrahan, 9 Wallace, 314; Wells on Jurisdiction Courts, secs. 472, 481; Wood on Mandamus, 59; Moses on Mandamus, 58, 88.)

The courts of the State have no power or jurisdiction to control or direct the action of the officers of the executive department of the State in the exercise and discharge of the powers and duties imposed upon them respectively by the Constitution and laws of the State. (State Constitution, arts. 2, 4; Act of 1881, General Laws, page 7; R. R. Co. v. Randolph, 24 Texas, 334; Bledsoe v. I. & G. N. R. R., 40 Texas, 537; Keuchler v.

Wright, 40 Texas, 670; R. R. Co. v. Gross, 47 Texas, 429; De-catur v. Paulding, 14 Peters, U. S., 515; United States v. Com-missioner, 5 Wallace U. S., 563; The Secretary v. McGarrahan, 9 Wallace U. S., 314; 1 Ark., 570; 8 Ga., 360; 19 Ill., 229; 14 Iowa, 162; 24 La. An., 351; 32 Maine, 510; 29 Mich., 320; 19 Minn., 103; 39 Mo., 388; 25 N. J., 331; 85 Penn. St., 433; 8 R. I., 192; 2 Bai-ley, S. C., 220; Cooley Const. Lim., 138; Wood Mandamus, 123; High Extra. Rem., sec. 120.)

When suit is brought against an officer of a State, who has no personal interest in the subject matter of the suit, and who defends only as the representative of the State's interest, and where the relief prayed for is a decree that the officer may be ordered to do and perform certain acts which, when done, will constitute the performance of an alleged contract of the State, it is a suit against the State which can not be maintained with-out its consent. (Hosner v. DeYoung, 1 Texas, 764; League v. DeYoung, 2 Texas, 497; Auditorial Board v. Arles, 15 Texas, 74; Marshall et al. v. Clark, Sec'y State, 22 Texas, 24; Treas. of State v. Wygall et al., 46 Texas, 447; Ex Parte Ayers, Attor-ney General, 123 U. S. Rep., 443; 1 Peters, U. S., 110; 24 How. U. S., 66; 1 Seldon, N. Y., 380; 35 N. Y., 238; 37 N. Y., 511; 49 Mo., 112, 419; 36 Ind., 175.

GAINES, ASSOCIATE JUSTICE. This suit was brought by appel-lant to compel by mandamus the Commissioner of the General Land Office to issue to him patents to lands to which he is en-titled for building the State capitol, without paying the patent fees. Exceptions to the petition were sustained and the suit dismissed.

This is a companion case to cause No. 6388 between the same parties, and the opinion in that case this day delivered is also decisive of this. We there held that the Commissioner had a right and it was his duty to demand the patent fees before de-livering the patents, and it follows he can, in no event, be compelled to deliver them until the fees are paid.

We do not mean to imply by this that a mandamus will lie against him, even if the appellant were entitled to his patent without payment of fees. We are clearly of the opinion that a mandamus will not lie against him in a case like this. Waiving the question of the constitutionality of the act of February 15, 1881, which provides that no writ of mandamus or injunction shall issue against any of the heads of depart-

ments in this State, and waiving the further question, whether the Commissioner can be compelled to issue a patent when the real controversy is between individuals, we think this is in effect a suit against the State, and for that reason a mandamus will not lie. The Commissioner has no interest in the subject matter of the suit, but the State has a direct pecuniary interest. It is an attempt to enforce against the State by the writ of mandamus against the Commissioner of its General Land Office, a specific performance of a contract to convey lands. The real question which is sought to be adjudicated is, whether the State is entitled to the patent fees on the lands or not. If this were determined in the negative the State and not the Commissioner would be loser. The State can not be sued without its consent, either directly or indirectly. The following decisions, in our judgment, are decisive of the question: Marshall v. Clark, 22 Texas, 23; League v. De Young, 2 Texas, 497; Treasurer v. Wygall, 46 Texas, 447; Railroad Company v. Gross, 47 Texas, 429; Ex Parte Ayres, 123 United States, 443; Hosner v. De Young, 1 Texas, 764; Railway Company v. Randolph, 24 Texas, 317.

We find no error in the judgment and it is affirmed.

*Affirmed.*

Opinion delivered June 15, 1888.

[Associate Justice Walker not sitting.]