**TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Petitioner,**

v.

**Jeannie MILLER, individually and as representative of The Estate of Clyde Edwin Miller, III, deceased, and as next friend of Y.A. M., S.M. M., C.E. M., IV, and N.B. M., minor children, Respondent.**

No. 00–0338.

Supreme Court of Texas.

Argued Oct. 25, 2000.

Decided June 21, 2001.

rate and apart from a conspiracy claim. *See* 10 S.W.3d at 809 n. 12.

584

John Cornyn, Atty. Gen., Richard D. Naylor, Kurt Howard Kuhn, Meredith Lea Kennedy, Office of the Atty. Gen. of Texas, Austin, for Petitioner.

Martha K. Adams, Law Offices of Martha K. Adams, Galveston, Robert D. Green, Green & Barton, Houston, John McEldowney, Greer Hertz & Adams, Galveston, for Respondent.

Chief Justice PHILLIPS delivered the opinion of the Court, joined by Justice HECHT, Justice OWEN, Justice BAKER, Justice HANKINSON, Justice O'NEILL, and Justice JEFFERSON.

This is an interlocutory appeal of a plea to the jurisdiction by the Texas Department of Criminal Justice (TDCJ). An inmate's wife sought damages following her husband's death from meningitis while incarcerated in a TDCJ facility. We must decide whether the plaintiff has established waiver of sovereign immunity from suit under the Texas Tort Claims Act by demonstrating that the injury was caused by use of tangible personal property. TEX. CIV. PRAC. & REM.CODE § 101.021(2). Because we conclude that the claim is not within the statutory waiver, we reverse the judgment of the court of appeals, 48 S.W.3d 201, and render judgment dismissing the case for lack of subject matter jurisdiction.

## I.

In August 1994, while imprisoned at the TDCJ facility in Huntsville, Clyde Edwin Miller III began suffering from nausea and severe headaches. Dr. Martin Chaney and the on-site clinic staff administered pain medications, intravenous fluids, electrolytes, anti-nausea medications, and icepacks to alleviate Miller's symptoms. After fifteen days of this regimen, on September 8, Miller was hospitalized in the University of Texas Medical Branch (UTMB) at Galveston. There he was diagnosed with cryptococcal meningitis, which caused his death on September 28, 1994.

Miller's surviving spouse, Jeannie Miller, individually and on behalf of his estate and their children, brought a negligence claim against the State, TDCJ, UTMB, and Dr. Chaney (now deceased). Jeannie Miller alleged that Dr. Chaney's failure to timely or adequately evaluate her husband made a serious condition deteriorate into a fatal one. Specifically, she alleged that her husband's personal injury and death were proximately caused by the defendants' misuse of tangible property by (1) improperly administering pain medication and intravenous fluids which masked the symptoms of meningitis, (2) improperly reading and interpreting fever-detecting equipment, and (3) improperly using clinic facilities and equipment in diagnosing and treating Miller. The plaintiff further alleged that Dr. Chaney and the clinic staff were negligent "in failing to practice medicine in an acceptable manner consistent with public health and welfare," failing to evaluate Miller in a timely manner, failing to make a proper diagnosis, failing to order appropriate laboratory tests, and failing to treat Miller's true condition.

TDCJ filed a plea to the jurisdiction, and alternatively a motion for summary judgment, asserting that Jeannie Miller failed to bring her claim within the Tort Claims Act's limited waiver of sovereign immunity.[1] In response, the plaintiff asserted various technical defects in TDCJ's plea and motion and brought forth summary judgment evidence, including deposition testimony of a nurse at the TDCJ facility and an infectious disease specialist. The nurse testified that she administered various drugs, including Darvocet, a prescription pain medication, to Miller, and that the medications reduced his headaches and vomiting. The specialist described the progressive nature and symptoms of meningitis, explaining that Darvocet would have reduced the headaches, allowing the disease to progress undiagnosed to its fatal stage.

The trial court denied both TDCJ's plea to the jurisdiction and its alternative motion for summary judgment. TDCJ filed an interlocutory appeal from the denial of the plea to the jurisdiction, and the court of appeals affirmed the trial court's judgment.[2] TDCJ then petitioned this Court for review, contending that *Texas Department of Transportation v. Jones*, 8 S.W.3d 636, 639 (Tex.1999) (per curiam), requires a court to examine the pleadings to determine whether a plaintiff alleged waiver under the terms of the Tort Claims Act, which the court of appeals here did not do.

## II.

■ We first consider whether this Court has jurisdiction to consider TDCJ's appeal. TDCJ asserts jurisdiction based on a conflict between the decision below and our recent decision in *Jones*. TEXAS GOV'T CODE § 22.225(c) (this court has jurisdiction to review interlocutory appeals when "one of the courts of appeals holds differently from a prior decision of another court of appeals or of the supreme court"). This Court has conflicts jurisdiction if it appears that "the rulings in the two cases are 'so far upon the same state of facts that the decision of one case is necessarily conclusive of the decision in the other.'" *Coastal Corp. v. Garza*, 979 S.W.2d 318, 319 (Tex.1998). In *Jones*, we concluded: "Because governmental immunity defeats a trial court's subject matter jurisdiction, the court of appeals erred in affirming the denial of the Department's plea *without first determining whether Jones' pleadings state a claim* under the Texas Tort Claims Act." 8 S.W.3d at 639 (emphasis added). By contrast, the court of appeals below held: "Because [Jeannie Miller's] claim is made pursuant to the Texas Tort Claims Act, it is a claim for which the legislature has granted consent to sue the State." 48 S.W.3d at 204. But the court of appeals did not determine whether Jeannie Miller stated a claim under the Tort Claims Act, as required by *Jones*. This conflict is sufficient to confer jurisdiction on this Court.

## III.

■ The court of appeals' holding that a plaintiff can establish waiver of sovereign immunity simply by making a claim "pursuant to the Texas Tort Claims Act" is

---

1. TDCJ asserted that the plaintiff failed to (1) give adequate notice of the claim, as required by section 101.101(a), (2) demonstrate that Chaney was an "employee" of TDCJ, as defined in section 101.001(1), and (3) plead an injury proximately caused by use of tangible personal property, under section 101.021(2). Only the third issue is before this Court.

2. As in the court of appeals, TDCJ appeals only the trial court's denying the plea to the jurisdiction, not its denying the motion for summary judgment. The Legislature authorized interlocutory appeals by governmental units from the former but not the latter. TEX. CIV. PRAC. & REM.CODE § 51.014(a)(8).

erroneous under both *Jones* and our more recent decision in *Bland Independent School District v. Blue*, 34 S.W.3d 547 (Tex.2000). Mere reference to the Tort Claims Act does not establish the state's consent to be sued and thus is not enough to confer jurisdiction on the trial court. The Tort Claims Act provides a limited waiver of sovereign immunity, allowing suits to be brought against governmental units only in certain, narrowly defined circumstances. *See Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex.1998) ("the Legislature intended the waiver in the Act to be limited"). Therefore, "we must look to the terms of the Act to determine the scope of its waiver," *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex.1996), and then must consider the particular facts of the case before us to determine whether it comes within that scope.

■ The specific Tort Claims Act provision under which Jeannie Miller alleges waiver provides that "[a] governmental unit in the state is liable for ... personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM.CODE § 101.021(2). Although this provision speaks in terms of waiver of immunity from *liability*, the Act also waives immunity from suit to the same extent. TEX. CIV. PRAC. & REM.CODE § 101.025(a) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."). Under *Jones*, we must examine the plaintiff's pleadings to decide whether sovereign immunity has been waived. 8 S.W.3d at 639. We must also look to the summary judgment evidence the plaintiff offered to support her jurisdictional argument. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555 ("[A]

court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised."). Therefore, to decide whether Jeannie Miller has "affirmatively demonstrate[d] the court's jurisdiction to hear the cause," *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993), "we consider the facts alleged by the plaintiff, and to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties." *Texas Natural Resource & Conservation Comm'n v. White*, 46 S.W.3d. 864, 868 (Tex.2001).

IV.

■ We turn now to an examination of Jeannie Miller's pleadings and pertinent jurisdictional evidence. Her petition alleged generally that TDCJ was negligent in its treatment of her husband by failing to diagnose meningitis. But the Tort Claims Act does not waive sovereign immunity for all negligence claims against governmental units. Accordingly, Jeannie Miller sought to bring her claim within the "personal injury or death so caused by a condition or use of tangible ... property," TEX. CIV. PRAC. & REM.CODE § 101.021(2), waiver provision by also alleging that misuse of various medications and medical equipment masked the diagnosable symptoms of the fatal disease and by offering deposition testimony to support that theory.

The Tort Claims Act and our cases have distinguished claims involving the failure to use, or the non-use of property, which do not waive sovereign immunity, from claims involving a "condition or use" of tangible personal property that causes injury, which do effect a waiver. *Id.; compare Kerrville State Hosp.*, 923 S.W.2d at 584–86 (failure to prescribe medications

which allegedly could have prevented the injury is non-use thus not within the waiver), *with Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 300 (Tex.1976) (furnishing football uniform lacking proper protective device for player's knee injury is misuse thus within the waiver). Here, TDCJ contends that Jeannie Miller, in essence, alleged only the non-use of tangible personal property and an error in medical judgment, neither of which are within the statutory waiver.

Jeannie Miller responds that she alleges not only TDCJ's failure to use tangible property which could have prevented her husband's death, but also its simultaneous misuse of pain-reducing and anti-nausea medications, intravenous fluids, and diagnostic equipment. That misuse, she claims, "mask[ed] the symptoms of the severity of the progression of the life threatening nature of meningitis."

While this is an attractive attempt to distinguish our non-use cases, we are not persuaded. As we have previously observed: "There cannot be waiver of sovereign immunity in every case in which medical treatment is provided by a public facility. Doctors in state medical facilities use some form of tangible personal property nearly every time they treat a patient." *Kerrville*, 923 S.W.2d at 585–86. If there is waiver in all of those cases, the waiver of immunity is virtually unrestricted, which is not what the Legislature intended. *Id.* at 586; *see Lowe*, 540 S.W.2d at 302 (Greenhill, C.J., concurring).

■ "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." *White*, 46 S.W.3d at 869; *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex.1989). TDCJ did "bring into ... service" and "employ" various drugs and medical equipment while treating Miller, but that some property is merely involved is not enough. *Bossley*, 968 S.W.2d at 342. Using that property must have actually caused the injury. *White*, 46 S.W.3d at 869. The property "used" on Miller did not.

In *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339 (Tex.1998), a mentally ill patient escaped through unlocked hospital doors and later committed suicide by leaping in front of a truck. 968 S.W.2d at 340–41. We concluded that neither the use of tangible property-unlocking the hospital doors-nor their condition-being unlocked-caused the patient's death. *Id.* at 343. The doors may have "furnish[ed] the condition that made the injury possible" by permitting the patient to escape into the community where he committed suicide, but "the use and condition of the doors were too attenuated from [the patient's] death to be said to have caused it." *Id.*

Likewise, Miller's treatment might have furnished the condition that made the injury possible by suppressing symptoms that TDCJ staff otherwise could have recognized as meningitis, but the treatment did not actually cause his death. Neither the drugs nor the treatment afforded to Miller hurt him or made him worse, in and of themselves. His meningitis became progressively worse due to the passage of time and an alleged error in medical judgment; there is no evidence that any defendant's acts hastened or exacerbated his decline. That time might not have passed and that the symptoms of meningitis might have been recognized if the TDCJ staff had not treated Miller's complaints in an improper manner is in essence an allegation only of negligence, not of "use" of tangible personal property that "caused" injury.

## V.

We recognize that the distinction we draw is problematic. But we believe that

the Legislature drew that line in the Tort Claims Act. For many years, this Court and its justices have expressed their frustration in trying to draw principled boundaries between "use" and "non-use." *See Kerrville*, 923 S.W.2d at 584; *University of Tex. Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex.1994); *Robinson v. Central Tex. MHMR Ctr.*, 780 S.W.2d 169, 170–71 (Tex.1989); *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32 (Tex. 1983); *Lowe*, 540 S.W.2d at 301–03 (Greenhill, C.J., concurring). Despite these writings, the Legislature has made no change in this language. Under our precedents, we conclude that Jeannie Miller has not demonstrated waiver of sovereign immunity under the Tort Claims Act. Therefore, we reverse the judgment of the court of appeals and render judgment dismissing the case for lack of subject matter jurisdiction.

Justice HECHT filed a concurring opinion.

Justice ENOCH filed a dissenting opinion.

Justice HECHT, concurring.

This is now the sixteenth case in the thirty-two years since the Texas Tort Claims Act was passed[1] in which we have tried to determine whether personal injuries or death arose from the government's use of property so that the plaintiff's claim for damages is within the Act's waiver of sovereign immunity.[2] The plaintiff asserts that her husband died because the prison clinic gave him pain medication that masked his symptoms, thereby preventing proper diagnosis and treatment. The Court concludes that the plaintiff's complaint, in essence, is not about a misuse of pain medication, which did not worsen her husband's illness or hurt him in any way, but about the misdiagnosis of that illness, for which the Legislature has not waived sovereign immunity. I agree that the use of property alleged by the plaintiff is not sufficiently central to her claim to bring it within the statutory waiver, and that allowing claims like hers would greatly increase the government's liability, contrary to the undoubted purpose of the Tort

---

1. *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864 (Tex.2001); *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339 (Tex.1998); *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582 (Tex. 1996); *Kassen v. Hatley*, 887 S.W.2d 4 (Tex. 1994); *Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175 (Tex.1994); *Tex. Dep't of Mental Health & Mental Retardation v. Petty*, 848 S.W.2d 680 (Tex.1992); *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49 (Tex. 1992); *Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169 (Tex.1989); *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208 (Tex.1989); *Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617 (Tex.1987); *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30 (Tex.1983); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297 (Tex.1976); *Overton Mem'l Hosp. v. McGuire*, 518 S.W.2d 528 (Tex.1975); *Tex. Dep't of Corr. v. Herring*, 513 S.W.2d 6 (Tex. 1974); *Beggs v. Tex. Dep't of Mental Health and Mental Retardation*, 496 S.W.2d 252 (Tex. Civ.App.-San Antonio 1973, writ ref'd).

2. "A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."

TEX. CIV. PRAC. & REM.CODE § 101.021.

Claims Act.[3] Accordingly, I concur in the Court's opinion.

What troubles me gravely is that sixteen decisions from this Court—on the average, one every other year since the Act passed—and hundreds more from the courts of appeals have done so little to infuse the Act's use-of-property standard with meaning that the task now appears hopeless. The Tort Claims Act does not define "use", and nothing in the history of its passage provides a clue as to the standard's intended meaning.[4] The standard appears to have been inserted in the statute simply to narrow its waiver of immunity enough that Governor Smith would not veto it.[5] No other explanation has ever been advanced. No other jurisdiction employs such a standard for waiving sovereign immunity, so we cannot borrow from others' experience. For want of any legislative guidance, we have given the word "use" its ordinary meaning[6] and consequently held that for property to be used in causing injury it must actually be involved[7] and not merely serve as the situs of injury[8] or furnish the condition that makes injury possible.[9] The inadequacy of these basic notions in providing any real guidance for applying the use-of-property standard is apparent in our decisions. We have held that failing to provide a hospital patient a bed with rails[10] or a football player a properly protective uniform[11] or an epileptic swimmer with a life preserver[12] is a use of property within the statutory waiver of immunity, but failing to give a patient an injectionable drug[13] or to install a pump to dissipate gas fumes[14] is but a non-use of property and outside the waiver. We have held that misreading an electrocardiogram is a use of property,[15] but misreading medical records is not.[16]

Frustrated by our inability to find, or even invent from scratch, any cogent explanation for applying the use-of-property standard, we have repeatedly beseeched the Legislature for guidance. In *Lowe v. Texas Tech University*, Chief Justice Greenhill, who had earlier argued in favor of some statutory waiver of sovereign immunity,[17] wrote separately "to encourage the Legislature to take another look at the Tort Claims Act, and to express more clearly its intent as to when it directs that governmental immunity is waived."[18] Seven years later we complained in *Salcedo v. El Paso Hospital District* that despite calls for clarification from Chief Justice Greenhill in *Lowe* and from the venerable Dean Keeton in a report to the Texas Senate—stating that the use-of-

---

3. *See Bossley*, 968 S.W.2d at 341–42.

4. *Lowe*, 540 S.W.2d at 301–302 (Greenhill, C.J., concurring); *Bossley*, 968 S.W.2d at 341–42.

5. *Bossley*, 968 S.W.2d at 342.

6. *Mount Pleasant*, 766 S.W.2d at 211.

7. *Bossley*, 968 S.W.2d at 343.

8. *LeLeaux*, 835 S.W.2d at 52.

9. *Bossley*, 968 S.W.2d at 343.

10. *Overton*, 518 S.W.2d at 529.

11. *Lowe*, 540 S.W.2d at 300.

12. *Robinson*, 780 S.W.2d at 171.

13. *Kerrville*, 923 S.W.2d at 584.

14. *White*, 46 S.W.3d at 866.

15. *Salcedo*, 659 S.W.2d at 33.

16. *Kassen*, 887 S.W.2d at 14; *cf. Petty*, 848 S.W.2d at 684 (plurality opinion).

17. Joe R. Greenhill, *Should Governmental Immunity for Torts Be Re-examined, and, If So, by Whom?*, 31 Tex. Bar J. 1036, 1072 (1968).

18. 540 S.W.2d at 301 (Greenhill, C.J., concurring).

property standard is "productive of undesirable litigation over its meaning"—none had been forthcoming.[19] Six more years passed, and in *Robinson v. Central Texas MHMR Center*, we wrote: "We once again call on the legislature to clarify, as soon as possible, the extent to which it intended to waive governmental immunity."[20] In *Texas Department of Mental Health & Mental Retardation v. Petty*, a plurality of the Court reaffirmed its decision in *Salcedo*, stating: "It has now been sixteen years and nine regular legislative sessions since our decision in *Lowe* and nine years since *Salcedo*, and despite amendment and recodification of the Act, and yet another legislative session after *Robinson*, the Legislature has not even attempted to alter our prior holdings."[21] Yet our decisions since *Petty* have been so plainly irreconcilable with *Salcedo*[22] that we have finally limited the holding in that case to its facts,[23] and still the Legislature has not responded. Use, non-use-whatever.

After thirty-two years and hundreds of cases, I am now convinced that it is simply impossible for the courts to meaningfully construe and consistently apply the use-of-property standard in the Tort Claims Act. The principal reason, I think, is that no discernible relationship exists between the use or non-use of property and governmental tort liability or non-liability. Setting aside the difficulty in determining "use", and taking only clear cases: *why* should the government be liable for administering medication that injures a patient but be immune from liability for withholding medication that could have helped the patient? Or *why* should the government be liable for not confining a patient to his bed but be immune from liability for not confining him to the hospital? The point of such examples is not that liability or non-liability in particular circumstances is good or bad policy, an issue the judiciary should not decide; rather, the point is that the Legislature, which must decide such policy matters, has not provided the judiciary a usable answer. If the Legislature, in response to our several requests for help, had ever provided any indication of what it intended by limiting its waiver of immunity to injuries and death arising from a use of property, the courts would certainly be constrained to carry out that intent. But the Legislature has met every request with silence.

That silence cannot be ascribed to the absence of workable solutions to the immunity question. The Federal Tort Claims Act has exceptions to liability that are capable of being understood and applied.[24] Moreover, its procedures for administrative adjustment of tort claims[25] provide a non-judicial forum for seeking relief. The federal scheme has not inundated its courts with tort cases against the government; in fiscal years 1996 and 1997, only 365 tort cases against the United States were terminated by trial.[26] Regardless of

19. 659 S.W.2d at 32.

20. 780 S.W.2d at 170.

21. 848 S.W.2d at 683–84 (plurality opinion).

22. *Kassen*, 887 S.W.2d at 14; *York*, 871 S.W.2d at 178–79.

23. *Bossley*, 968 S.W.2d at 342.

24. 28 U.S.C. § 2680.

25. 28 U.S.C. § 2672.

26. Marika F.X. Litras & Carol J. DeFrances, Federal Tort Trials and Verdicts, 1996–97 2 (U.S. Dep't of Justice, Office of Justice Programs, Bureau of Justice Statistics) (February 1999; revised May 3,1999) (NCJ 172855) (available at http://www.ojp.usdoj.gov/bjs/pubalp2.htm).

whether the federal approach would be appropriate in Texas, the federal experience at least shows that a more workable system is possible.

The most this Court has been able to make of the use-of-property standard is that property must have been directly involved in an actionable injury or death, and that the Legislature intended only a partial waiver of immunity. In our "long and arduous history" of construing the statute,[27] we have not succeeded in extracting anything more. Having thoroughly explored every possible basis for the standard and found none that is workable, having patiently searched for some pattern to emerge from three decades of attempts to apply the standard in various circumstances, and having repeatedly requested guidance from the Legislature to absolutely no avail, the courts cannot, in my view, continue to apply a legislative standard that cannot be understood sufficiently to reach reasoned, consistent decisions. A classification that is unreasonable, arbitrary, or capricious is not within the Legislature's authority to make.[28] Neither, I would add, is a classification that cannot be understood and consistently applied.

To disregard the statutory waiver for personal injury and death claims arising from a use of property would significantly raise the immunity bar, contrary to the legislative intent that at least some claims be allowed. In modern times, governmental immunity from tort claims has been severely criticized.[29] A creature of the common law,[30] immunity has been limited or abolished in every jurisdiction in this country, either by statute or by judicial decision.[31] The common-law rule of immunity in Texas was the judiciary's to recognize,[32] and it is ours to disregard.[33] An abolition of immunity is more likely, I

27. *Kerrville,* 923 S.W.2d at 584; *York,* 871 S.W.2d at 177.

28. *Wood v. Wood,* 159 Tex. 350, 320 S.W.2d 807, 809 (1959).

29. *See* Joe R. Greenhill & Thomas V. Murto, III, *Governmental Immunity,* 49 Tex. L.Rev. 462, 472 (1971); Edwin M. Borchard, *Government Liability in Tort,* 34 Yale L.J. 1, 2–3 (1924); R.T. Kimbrough, Annotation, *Role of Municipal Immunity from Liability for Acts in Performance of Governmental Functions as Applicable in Case of Personal Injury or Death as Result of a Nuisance,* 75 A.L.R 1196 (1931). *See also, e.g., Pruett v. City of Rosedale,* 421 So.2d 1046 (Miss.1982) (abolishing sovereign immunity with certain exceptions); *Bulman v. Hulstrand Construction Co.,* 521 N.W.2d 632, 638–39 (N.D.1994) (abolishing sovereign immunity from tort liability).

30. *City of Amarillo v. Martin,* 971 S.W.2d 426, 427 (Tex.1998); *Heigel v. Wichita County,* 84 Tex. 392, 19 S.W. 562 (1892); *cf. Taylor v. Hall,* 71 Tex. 206, 9 S.W. 148, 149 (1888). *See* Glen A. Majure et. al, *The Governmental Immunity Doctrine in Texas–An Analysis and Some Proposed Changes,* 23 Sw. L.J. 341, 341 (1969).

31. *Clouse v. State,* 199 Ariz 196, 16 P.3d 757, 760 [¶ 14] (2001) ("Although most states have waived their sovereign immunity, either through judicial abrogation or legislative waiver, all fifty states have enacted some form of 'Tort Claims Act' to define, and sometimes to re-establish, the parameters of governmental liability. See 57 Am.Jur.2d *Municipal, County, and State Tort Liability* § 129 (1988).")

32. *Hosner v. DeYoung,* 1 Tex. 764, 769 (1847) (recognizing doctrine, without citation of authority); *Bd. of Land Comm'rs v. Walling,* Dall. 524 (Tex.1843) (recognizing doctrine, without citation of authority).

33. *See also* Joe R. Greenhill, *Should Governmental Immunity for Torts be Re Examined, and, If So, by Whom?* 31 Tex. B.J. 1036, 1065–70 (1968)(discussing other states case law, and arguing practical reasons for legislative, rather than judicial, abolishment); Civil Actions against State and Local Government §§ 1.7–1.8 (John L. Craig et al., eds., 2d. Ed.1992).

think, to prompt the enactment of a reasoned system for determining the government's fair responsibility for its torts than a reinstatement of the absolute bar that existed before the Act.

The Court has often said that it should defer to the Legislature for any waiver of governmental immunity. I have joined in that view and continue to endorse it, but defer does not mean abdicate. I no longer see any way to obtain a legislative determination and preserve reasoned decision-making by the courts without abolishing the government's common-law tort immunity, leaving it to the Legislature to decide whether and how to fill the void.

Justice ENOCH, dissenting.

I agree that the Court has jurisdiction to entertain the petition for review in this case. But the Court's reasoning contains two flaws that lead it to declare the wrong result. First, implicit throughout the Court's opinion is its belief that Jeannie Miller cannot prove that the medicine's masking of her husband's symptoms caused his meningitis to go unrecognized by his doctors, and therefore she cannot prove that the medicine caused his death. But the question here is not whether Miller has *proved* that the medicine caused her husband's death. Rather the question is whether she has *alleged* that the medicine caused his death.[1] She did.

Second, the Court misapplies *Dallas County Mental Health & Mental Retardation v. Bossley*.[2] *Bossley* stands for the proposition that the use or condition of property that was not causally linked to the patient's injury did not invoke the Tort Claims Act's waiver of sovereign immunity.[3] As in *Bossley*, it is undisputable that there was a use of property in this case, contrary to the majority's contention that the allegation here was "only of negligence, not of 'use' of tangible personal property that 'caused' injury." But unlike *Bossley*, the plaintiff here presents a distinct causal link, which the majority sidesteps, between the "use" of the property and the injury suffered.

For these two reasons, I respectfully dissent.

As the Court acknowledges, Miller "alleg[ed] that misuse of various medications and medical equipment masked the diagnosable symptoms of" her husband's meningitis.[4] And as a result, the doctors failed to diagnose the meningitis. Consequently, she argues, her claim falls within the narrow waiver of sovereign immunity for claims of death or personal injury "caused by ... use of tangible ... property...."[5] Yet the Court rejects Miller's argument asserting that the causal connection between the medication and her husband's death is too attenuated.[6] The Court's reasoning is not only unpersuasive, it's not credible.

This Court has, on a number of occasions, pleaded with the Legislature to reconsider the waiver section at issue not only because its application is difficult but because its concept seems almost irrational.[7] Justice Hecht's concurrence empha-

---

1. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000).

2. 968 S.W.2d 339 (Tex.1998).

3. TEX. CIV. PRAC. & REM.CODE § 101.021(2).

4. 51 S.W.3d 583, 587.

5. TEX. CIV. PRAC. & REM.CODE § 101.021(2).

6. 51 S.W.3d at 588.

7. *See Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 301 (Tex.1976) (Greenhill, C.J., concurring); *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32 (Tex.1983); *Robinson v. Central Texas MHMR Ctr.*, 780 S.W.2d 169, 170–71 (Tex.1989); *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex.1996).

sizes again how unworkable the requirement of the statute is. But that reality does not give the Court license to make the application of the law more ridiculous than it already is.

TDCJ gave Miller's husband medicine-tangible personal property. A fact the Court concedes. And that medicine caused a change in the condition of the patient. A fact the Court cannot avoid. But the Court claims that this use of medicine did not cause Mr. Miller's death as *Bossley* requires: "TDCJ did 'bring into ... service' and 'employ' various drugs and medical equipment while treating Miller, but that some property is merely involved is not enough. Using that property must have actually caused the injury. The property 'used' on Miller did not." [8] Really?

*Bossley's* charge is that "[p]roperty does not cause injury if it does no more than furnish the condition that makes the injury possible." [9] There is neither doubt nor dispute that Miller claims that the medication that TDCJ gave her husband did more than merely furnish the condition that killed Mr. Miller. She alleges that the medicine caused his doctors to misdiagnose the real problem—the meningitis—by hiding its symptoms. With proper candor, the majority acknowledges that the medicine "might have furnished the condition that made the injury possible *by suppressing symptoms that TDCJ staff otherwise could have recognized as meningitis ....*" [10] How this is not an allegation of causation under anyone's definition escapes me. But the Court appears to be caught up in its misapplication of *Bossley*.

*Bossley* dealt with a situation where an employee left a door unlocked—a condition of property conducive to escape by a mental patient. [11] Here, though, the property wasn't just in a particular state of existence, the property was medicine with active ingredients actually ingested by the patient, given by the state to the patient, and intended by the state to alter the patient's condition. And Miller's complaint is that the medicine affected the doctor's ability to properly diagnose her husband's illness. *Bossley's* causation discussion dealt with the lack of a causal link between the use or condition of the property and the patient's death [12]—not with a situation where there actually existed a causal link between the use of the property and the patient's death.

*Bossley's* legitimacy depends on the fact that the unlocked door was too far removed from the patient's death—the patient was run over when he ran into traffic, [13] he didn't kill himself because the door was unlocked. But had the allegation been that *Bossley* killed himself because of an irrational fear of unlocked doors, the door would still have done "no more than furnish the condition that makes the injury possible." Yet in that case the door would have been causally linked to the patient's death. I suggest the outcome in *Bossley* might have been different.

This Court's opinion in *Salcedo v. El Paso Hospital District* [14] aptly demonstrates the same distinction. This Court has, in recent years, been critical of that opinion because the case dealt with a doctor misreading information from an electrocardiogram machine. Our criticism of

---

8. 51 S.W.3d at 588 (citations omitted).

9. 968 S.W.2d at 343.

10. 51 S.W.3d at 588 (emphasis added).

11. 968 S.W.2d at 341–42.

12. *Id.* at 343.

13. *Id.*

14. 659 S.W.2d 30.

*Salcedo* is that the case actually dealt with the misuse of information and not any misuse of the machine—for the evidence showed that the machine was properly used, the doctor just misread the information it produced. We limited *Salcedo* to its facts in *University of Texas Medical Branch at Galveston v. York*, explaining that where the allegation is that the doctor misread the information, the fact that the information is in tangible form does not make it the "use" of tangible personal property.[15] But what of our criticism of *Salcedo* if we change one fact-suppose the doctor actually misused the EKG machine, creating a misreading, which allowed the patient's heart attack to go undiagnosed. Would *Salcedo* have been so troubling?

And what would the result in *York* have been if the allegations were that a nurse misused, not misread, a thermometer resulting in incorrect information being recorded, which in turn resulted in the doctor misdiagnosing the patient's condition. Is there any doubt that a causal link between the misuse of a thermometer and the patient's injury would have been alleged?

And how should the Court deal with *Overton Memorial Hospital v. McGuire?*[16] In *McGuire*, a patient fell out of a hospital bed and was injured.[17] The Court held that negligently providing a bed without rails when the bed was being used to protect a patient that could not protect himself was "use" of tangible personal property that "caused" the plaintiff's injury.[18] But the bed didn't **do** anything. It didn't expel the patient, nor did it permit someone to push the patient out of bed. Rather, the patient simply fell out of bed because there were no rails to hold him in

bed.[19] In truth, the rail-less bed did no more than furnish a condition that made the patient's injuries possible—the *Bossley* standard the Court uses in this case. So shouldn't *McGuire* be overruled? It's telling that the Court doesn't do so.

The point is that although it is the doctor's misdiagnosis that is the direct cause of a patient's injury, to reach that diagnosis, the doctor relies on information that comes from a number of sources, which includes machines, medicines and patient complaints. If any one of those sources fails to provide accurate information, leading to the misdiagnosis, a causal link to the injury is established. And when the source of that information is improperly used tangible personal property, the Tort Claims Act waives sovereign immunity.

The allegation in this case is that by giving Mr. Miller medicine, his symptoms were "masked." And it was this masking that generated inaccurate information that, by being relied upon by the doctor, resulted in the doctor making an inaccurate diagnosis. Unlike *Bossley*, there are allegations here that the use of tangible personal property, by altering the patient's symptoms, caused the doctor to misdiagnose the patient's illness.

In sum, the real *Bossley* causation problem is that the unlocked door and the patient's running into traffic couldn't be causally linked. In the *Bossley* context, the "furnish a condition that makes the injury possible" language is correct. But here, the majority has used that same language to create a causation standard so burdensome that the medicine would have to have literally killed the patient to have

---

**15.** 871 S.W.2d 175, 178–79 (Tex.1994).

**16.** 518 S.W.2d 528 (Tex.1975) (per curiam).

**17.** *Id.* at 528.

**18.** *Id.* at 529.

**19.** *Id.* at 528.

"caused" the injury. I respectfully remind the Court that the standard for causation in Tort Claims Act cases is "proximate cause,"[20] and not anything heavier. Assuming, as the Court protests, its application of *Bossley* in this case is not changing the proximate cause standard, I challenge the Court to explain how the decision in *McGuire* remains viable. I agree with the Court's reading of *Kerrville State Hospital*[21] that " '[d]octors in state medical facilities use some form of tangible personal property nearly every time they treat a patient.' If there is waiver in all of those cases, the waiver of immunity is virtually unrestricted, which is not what the Legislature intended."[22] But it isn't enough to simply "use" property. The property must also be the proximate cause of the injury. The misuse of tangible personal property that causes a patient, by way of his symptoms, to give a doctor incorrect information upon which the doctor bases an incorrect diagnosis is the proximate cause of the resulting injury.

I don't assert that Miller can prove causation—that medicine that merely relieves patient's symptoms can cause doctors to mis-diagnose serious illnesses—that remains for expert proof and a decision on the merits. But as a matter of law, alleging that medicine masked symptoms, leading to an error in diagnosis, meets the threshold allegation of use of personal property under the Tort Claims Act.

The trial court has jurisdiction to entertain the merits of Miller's complaint. Consequently, the court of appeals judgment should be affirmed. I respectfully dissent.

---

**20.** *Bossley,* 968 S.W.2d at 343.

**21.** 923 S.W.2d 582.

**22.** 51 S.W.3d at 588 (quoting *Kerrville State Hosp.,* 923 S.W.2d at 585–86).