NO. 07-03-0232-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

FEBRUARY 11, 2004

_____

RICKY  STARKS,

Appellant

v.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE,

Appellee

_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 89,630-D; HON. DON EMERSON, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

Ricky Starks (Starks) appeals from a final judgment wherein the trial court granted the plea to the jurisdiction of the court filed by the Texas Department of Criminal Justice (TDCJ).  The latter argued that the suit should be dismissed due to the want of jurisdiction.  Furthermore, jurisdiction was non-existent because Starks could not "show that his injury was caused by a use of property under the Texas Tort Claims Act."  Starks attacks the trial

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.  Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004).

court's judgment via six issues. Through each, he attempts to illustrate that he actually alleged a claim within the scope of the Tort Claims Act. We reverse the judgment.

*Authority*

It is beyond dispute that state governmental agencies enjoy sovereign immunity from suit. Nevertheless, our legislature has said that they could be held liable for damage, injury, or death caused by a condition or use of tangible personalty "if the governmental unit would, were it a private person, be liable to the claimant according to Texas Law." TEX. CIV. PRAC. & REM. CODE ANN. §101.021(1)(A) & (2); *Rule v. City of Lubbock*, 68 S.W.3d 853, 857 (Tex. App.–Amarillo 2002, no pet). Thus, to avoid their immunity, the complainant, through his pleadings, must allege facts illustrating a viable cause of action involving damage, injury or death caused by a condition or use of tangible personalty. *Rule v. City of Lubbock,* 68 S.W.3d at 857. In other words, for one to enjoy the window opened by the Tort Claims Act, they must plead facts which, if accepted as true, satisfy the elements of the Tort Claims Act. *Id.*

We caution, however, that the trial court is not to assess the merits of the underlying cause of action when determining if the pleadings meet the requisite standard. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Rule v. City of Lubbock,* 68 S.W.3d at 857. That is, it must not require the complainant to prove the merits of his underlying cause of action. Instead, the petition is normally viewed as the source of the information used to assess jurisdiction, though extraneous evidence may be received by the court depending upon the nature of the jurisdictional attack. *Id.*; *see Texas Dept. Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001) (stating that "we must examine the

2

plaintiff's pleadings to decide whether sovereign immunity has been waived" but also consider the evidence presented).[2]

Next, for purposes of the Tort Claims Act, the word "use" means "'to put or bring into action or service; to employ for or apply to a given purpose.'" *Texas Dept. Crim. Justice v. Miller*, 51 S.W.3d at 588. And, it is this element of the Tort Claims Act which Starks failed to satisfy given the allegations in his live petition, according to the TDCJ. Thus, to see if it is correct, we must not only read the petition but also do so in a liberal manner since Starks represents himself. *See Giddens v. Brooks*, 92 S.W.3d 878, 880 (Tex. App.–Beaumont 2002, pet. denied) (stating that the pleadings of a *pro se* litigant are to be liberally construed); *Johnson v. McAdams*, 781 S.W.2d 451, 452 (Tex. App.–Houston [1st Dist.] 1989, no writ) (stating that the "Supreme Court directs us to seek the substance of a *pro se* complaint by reviewing *pro se* applications with liberality and patience").

*Application of Authority*

Starks sued the TDCJ for compensation due to a skin infection he developed while incarcerated. He alleged, among other things, the following in his live petition:

> . . . From [August 13, 2001] until nearly the third of [S]eptember was a three week period of time in which plaintiff had to retain possession of his sheets with no opportunity to exchange them for clean ones. Throught [sic] that time the security detention inmates were shaken down[,] and plaintiff's sheets were spread across the dirty concrete floor. This occurred on the 27th of August. This was the further contamination of the sheets where plaintiff still

[2]To the extent the TDCJ suggests that jurisdiction was wanting since Starks could not prove causation, it is inviting the court to do that cautioned against in *Bland*. Contending, via a motion to dismiss or a plea to the jurisdiction of the court, that the suit should be dismissed for want of jurisdiction because Starks cannot prove an element of his claim, *i.e.* causation, differs from contending that it should be dismissed since he failed to *allege* a cause of action within the scope of the Tort Claims Act. The former invites the court to assess the merits of the case, contrary to the directive in *Bland*, while the latter does not. The latter, instead, simply requires perusal of the pleadings to see what was alleged and whether those allegations fit within the Act.

3

had to sleep on the sheets. During the shakedown all cleaning supplies were taken from the inmates . . . . So, here is a situation where plaintiff could not even wash the sheets that he did have. Therefore, plaintiff was required to sleep on the dirty sheets after they had been spread across the floor, when sheets were to be issued on that same Monday. Sheets were not given to any of the security detention inmates. Plaintiff then contracted an infection that worsened so fast that it had [spread] over the entire right side of his back and ultimately over the whole back area. Said infection increased to the stage of sores which bled over the sheets plaintiff was forced to continue to sleep on . . . .

Reading Starks' allegations with the "liberality and patience" contemplated in *Johnson v. McAdams*, we see that he complains of several things. One involves an omission on the part of his jailers, that omission being their failure to provide him with clean sheets for several weeks. The other encompasses their act of spreading his sheets on a dirty concrete floor part, which resulted in their further contamination, and then requiring that he sleep on them.[3] The former may not be actionable since it entails allegations of injury arising from the non-use of personalty, *i.e.* the failure to provide clean sheets. *See Kassen v. Hatley*, 887 S.W.2d 4, 11 (Tex. 1994) (stating that the non-use of property, such as available drugs during emergency medical treatment, does not result in the waiver of sovereign immunity). Yet, the same cannot be said of the latter. In contaminating the sheets by spreading them across a dirty floor and then returning the soiled items for him to sleep on, it can be said that the TDCJ employees "put or [brought] into action or service" or "employ[ed] . . . or appl[ied] to a given purpose" the sheets that purportedly caused Starks' infection. Whether the allegations are true or whether Starks' injuries were caused by whatever filth, if any, attached to the sheets after being placed on the floor is irrelevant

---

[3]Though no evidence was offered at the hearing on TDCJ's plea, Starks argued that the "dirty concrete floor . . . has spit on it, food particles on it, coffee spills on it, and sewage backup on it where they improperly mop them . . . ."

to our inquiry.  Those matters implicate the merits of his claim, not whether he alleged a cause of action within the scope of the Texas Tort Claims Act.

Given our obligation to construe his petition liberally, we conclude that Starks' alleged facts illustrate that his injury arose due to a condition or use of tangible personalty. And, because they did, the trial court erred in concluding otherwise and, thereby, entering judgment denying him recovery.  Accordingly, the judgment is reversed, and the cause is remanded to the trial court.


Brian Quinn
Justice

5