NUMBER 13-01-293-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI B EDINBURG

                                                                                                                                 


 

TEXAS DEPARTMENT OF PUBLIC SAFETY,                   Appellant,

 

                                           v.

 

FRANCISCO RIVERA,                                               Appellee.

                                                                                                                                 


 

 On appeal from the 107th District Court of Cameron County,
Texas.

                                                                                                                                 


 

                              O P I N I O N

 

   Before Chief Justice Valdez and Justices Hinojosa and Castillo

                          Opinion by Justice
Hinojosa

 








Appellant, the Texas Department of
Public Safety (DPS), appeals from the trial court=s
order denying its plea to the jurisdiction. 
In two issues, the DPS contends the trial court erred by denying its
plea to the jurisdiction because appellee, Francisco
Rivera, did not provide proper notice and his claims of intentional tort and
negligent hiring do not fall within the limited waiver of governmental immunity
provided by the Texas Tort Claims Act (TTCA). 
Tex. Civ. Prac. & Rem. Code
Ann. ch. 101 (Vernon 1997 and Supp.
2002).  We affirm the trial court=s order.

                                                A.  Background

Rivera filed suit against the DPS
and two of its officers.[1]  He alleged that the officers had injured him
by tightly handcuffing him after they arrested him for the offense of driving
while intoxicated.[2]  The DPS specially excepted to Rivera=s petition, and filed a plea to the
jurisdiction asserting that:  (1) Rivera
had not given the DPS proper notice and (2) the suit against the individual
officers was not within the waiver of immunity provided by the TTCA.  The trial court initially granted the
plea.  After Rivera filed a motion for
reconsideration, the court denied the plea and ordered Rivera to Aamend his pleadings, setting forth
in greater particularity the manner in which NOTICE was given by Plaintiff to
the Defendant Agency.@








In his first amended petition,
Rivera asserted he was suing the DPS and Troopers Villarreal and Lopez Aindividually, as well as jointly.@ 
He alleged that the officers had injured him by tightly handcuffing him A in a reckless and brutal manner@ after they arrested him for the
offense of driving while intoxicated. 
Rivera claimed that the officers= Agross
negligence and reckless conduct in the mistreatment of Plaintiff caused severe
and permanent injury.@ 
He asserted that the DPS Awas negligent in failing to
properly train and control@ the officers` and that the DPS was
responsible, under the doctrine of respondeat
superior, for its officers= acts.  Rivera further alleged that he had given both
the DPS and the officers actual notice of his complaint.  

The DPS then filed a second plea to
the jurisdiction, asserting that the facts pleaded by Rivera did not constitute
actual notice, and that the suit against the DPS was not within the TTCA waiver
of immunity.  In support of its plea, the
DPS attached a portion of Rivera=s deposition.  Rivera filed no response.  The trial court denied the DPS=s second plea to the jurisdiction,
and this appeal ensued.

                                                 B.  Jurisdiction

This court has jurisdiction to hear
an appeal of an order granting or denying a plea to the jurisdiction by a
governmental unit as defined in section 101.001 of the civil practices and
remedies code.  Tex. Civ. Prac. & Rem. Code Ann. '' 51.014(a)(8), 101.001(3) (Vernon
Supp. 2002).  It is undisputed that the
DPS is such a governmental unit. 
Therefore, we have jurisdiction to hear this interlocutory appeal. 

                                          C.  Standard
of Review








We review a trial court=s ruling on a plea to the
jurisdiction under a de novo standard of review.  Mayhew v. Town of Sunnyvale, 964
S.W.2d 922, 928 (Tex. 1998), cert. denied, 526 U.S. 1144 (1999); Denton
County v. Howard, 22 S.W.3d 113, 118 (Tex. App.BFort Worth 2000, no pet.).  A plea to the jurisdiction contests the
authority of a court to determine the subject matter of the case.  Dolenz v.
Tex. State Bd. of Med. Exam=rs, 899 S.W.2d 809, 811 (Tex. App.BAustin 1995, no writ).  The plaintiff bears the burden of alleging
facts affirmatively demonstrating the trial court=s
jurisdiction to hear a case.  Texas
Ass=n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993); Mission
Consol. Indep. Sch. Dist.
v. Flores, 39 S.W.3d 674, 676 (Tex. App.BCorpus
Christi 2001, no pet.);  El Paso Cmty. Partners v. B & G/Sunrise Joint Venture, 24
S.W.3d 620, 623 (Tex. App.BAustin 2000, no pet.).   The trial court must construe the plaintiff=s pleadings liberally in favor of
jurisdiction.  Peek v. Equip. Serv. Co., 779 S.W.2d 802, 804 (Tex. 1989). 

A plea to the jurisdiction
challenges a court=s authority to hear a case by
alleging that the factual allegations in the plaintiff=s pleadings, when taken as true,
fail to invoke the court=s jurisdiction.  Bybee v.
Fireman=s Fund Ins. Co., 160 Tex. 429, 331 S.W.2d 910, 917
(1960); Mission Consol. Ind. Sch. Dist., 39
S.W.3d at 676; El Paso Cmty. Partners, 24
S.W.3d at 623.  In a case brought under
the TTCA, we must examine the plaintiff=s pleadings to decide whether
sovereign immunity has been waived.  Texas
Dep=t of Criminal Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2001)
(citing Tex. Dep=t of Transp.
v. Jones, 8 S.W.3d
636, 639 (Tex. 1999)).  To determine
whether the plaintiff has affirmatively demonstrated the court=s jurisdiction to hear the case, we
consider the facts alleged by the plaintiff, and to the extent it is relevant
to the jurisdictional issue, the evidence submitted by the parties.  Miller, 51 S.W.3d at 587; Tex.
Natural Res. & Conservation Comm=n v. White, 46 S.W.3d 864, 868 (Tex. 2001); Tex.
Ass=n of Bus., 852 S.W.2d at 446.  The supreme court has stated:

a court deciding a plea to the
jurisdiction is not required to look solely to the pleadings but may consider
evidence and must do so when necessary to resolve the jurisdictional issues
raised.  The court should, of course,
confine itself to the evidence relevant to the jurisdictional issue. . . .  Accordingly, the trial court should have
considered [the governmental unit=s] evidence in deciding its plea to
the jurisdiction. . . .@ 


Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000).

                           D.  TTCA:
Waiver of Sovereign Immunity








Texas courts have long recognized
that sovereign immunity protects the State of Texas, its agencies, and its
officials from lawsuits for damages absent a legislative consent to sue.   Fed. Sign v. Tex. S. Univ., 951
S.W.2d 401, 405 (Tex. 1997); Mount Pleasant Indep.
Sch. Dist. v. Lindburg,
766 S.W.2d 208, 211 (Tex. 1989). 
Immunity from suit bars a suit against the state unless the state has
expressly consented to the suit.  Id.  Legislative consent to sue must be by clear
and unambiguous language, in either a statute or by other express legislative
permission.  Jones, 8 S.W.3d at
638; Fed. Sign, 951 S.W.2d at 405. 
Absent the state=s consent to suit, a trial court
lacks subject matter jurisdiction over a suit against a governmental unit.  Jones, 8 S.W.3d at 638.  Because immunity from suit defeats a trial
court=s subject matter jurisdiction, it
is properly asserted in a plea to the jurisdiction.  Id. at 638-39. To avoid dismissal for
lack of subject matter jurisdiction, a plaintiff must fully comply with all the
provisions of the TTCA.  See State v. Kreider, 44 S.W.3d 258, 262 (Tex. App.BFort Worth 2001, no pet. h.); Lamar
Univ. v. Doe, 971 S.W.2d 191, 197 (Tex. App.BBeaumont
1998, no pet.); Tex. Parks & Wildlife Dep=t v. Garrett Place, Inc., 972 S.W.2d 140, 143 (Tex. App.BDallas 1998, no pet.).








Under the TTCA, a governmental unit
is liable for Apersonal injury and death so caused
by a condition or use of tangible personal property or real property if the
governmental unit would, were it a private person, be liable to the claimant
according to Texas law.@ 
Tex. Civ. Prac. & Rem. Code
Ann. ' 101.021(2) (Vernon 1997).  It is undisputed that Rivera=s claims against the DPS are
subject to the limitations imposed by the TTCA.  See Univ. of Tex. Med. Branch at Galveston v.
York, 871 S.W.2d 175, 176 (Tex. 1994) (negligence claims fall under
TTCA).  Because the DPS is a governmental
unit, any such claim brought against it must be brought under the TTCA or the
claim will be precluded by the doctrine of sovereign immunity.  See Benavides v. Dallas-Fort Worth Int=l Airport Bd., 946 S.W.2d 576, 578 (Tex. App.BFort Worth 1997, no writ).

Mere reference to the TTCA does not
establish the state=s consent to be sued and thus, is
not enough to confer jurisdiction on the trial court.  Miller, 51 S.W.3d at 587.  The TTCA provides a limited waiver of
sovereign immunity, allowing suits to be brought against governmental units
only in certain narrowly defined circumstances. 
Id.; Dallas County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 341 (Tex. 1998).  Therefore, we must look to the terms of the
TTCA to determine the scope of its waiver. 
Miller, 51 S.W.3d at 587; Kerrville State Hosp. v. Clark,
923 S.W.2d 582, 584 (Tex. 1996).  Then,
we must consider the particular facts of the case before us to determine
whether it comes within that scope.  Miller,
51 S.W.3d at 587. 

                  E.  Pleadings
and Evidence Before the Trial Court 

Rivera asserted he gave actual
notice of his claim to the DPS.  In his
first amended petition, Rivera alleged:

Immediately following his arrest,
Plaintiff personally visited with Sgt. Vargas at the Department of Public
Safety office in Brownsville, Texas and made an eight point complaint to Sgt. Vargas,
including, but not limited to, the fact that Plaintiff had sustained injuries
because of the improper use of handcuffs by Defendants Villarreal and
Lopez.  Sgt. Vargas told Plaintiff that
the ADPS would pursue legal action
against any person making false allegations against a DPS trooper.@ 
Sgt. Vargas was indifferent toward the complaint of the Plaintiff.

 

In its second plea to the
jurisdiction, the DPS claimed, inter alia, that
it had not received formal or actual notice as required by the TTCA.  The DPS asserted that even if the court
accepted Rivera=s account as true, the verbal
notice allegedly provided did not satisfy the notice requirements of the TTCA.








In support of its plea, the DPS
attached a portion of Rivera=s deposition in which Rivera
testified that after his arrest, he was taken by Officer Lopez to the
Brownsville Police Department, where he requested medical attention.  Rivera=s arms were red and there were
purple bruises where the handcuffs had been. 
An ambulance was called, and Trooper Lopez rode with him to the
Brownsville Medical Center.  Lopez stayed
with Rivera during the hospital examination. 
Rivera complained to the attending physician that his hands were
numb.  The doctor told him that it would
take several weeks for the feeling to return. 
Lopez then took Rivera to the Brownsville jail.

Rivera
testified that when he recovered his car the next day and discovered it had
been Aransacked,@ he went Astraight to the DPS office@ where he was directed to a Sgt.
Vargas.  Rivera told him that: Amy car had been ransacked without
reason . . . [and] he told me about a form that I had to fill out.@

Q:               
Did you fill out that form?    

 

A:               
No, sir.

 

Q:               
Did you leave anything in writing with the DPS
regarding your complaint?

 

A:               
No, sir.

 

Q:               
And so at that point you left, after talking to
Sergeant Vargas about your car?

 

A:               
Yes, sir.

 

Q:               
So at that point you never complained to
Sergeant Vargas about your wrists or anything?

 

A:               
Yes, I did. 
I showed him my wrists.  I still
had the imprint of the handcuffs.  He
told me that that it would eventually go away.

 








Q:               
And was there a form to fill out for that also
if you had any complaints about any incidents?

 

A:               
He did not offer any forms.

 

Q:               
Just to be clear, you=re
saying that he didn=t offer
any forms at all?

 

A:               
That=s right.

 

Q:               
What was the form you were referring to just a
minute ago?

 

A:               
I asked him. . . .  ADo I just
write a letter?  Can I write it in the
form of a statement or a memo?  Who am I
going to address it to?@  So he asked me if I was serious about filing
a complaint, and I said, AYes, sir.@  So he went and opened a pamphlet and made
some copies.

 

Q:               
And those were some forms; is that correct?

 

A:               
Yes, sir.

 

Q:               
And did he give you those forms?

 

A:               
Yes, sir.

 

Q:               
But did you take those forms?

 

A:               
Yes, sir.

 

Q:               
So you took them with you?

 

A:               
Yes, sir.

 

Q:               
Did you ever fill them out and return them to
the Department of Public Safety?

 

A:               
No, sir.

 

Q:               
Did you ever file anything in writing with the
Department of Public Safety besides this lawsuit?

 

A:               
No, sir, because after I went home from there I
contacted [my attorney]

 

                                            *  * 
*  *  *

 








Q:               
And when you were talking to Sergeant Vargas did
you tell him what you=ve told me here today about the events that happened that
night?

 

A:               
Yes, sir.

 

Q:               
Did you tell him in detail what happened?

 

A:               
Yes, sir.

 

Q:               
And at that point that=s
when he gave you the forms, after all that?

 

A:               
No, he told me that he was only hearing my side,
that he had to hear Trooper Villarreal=s side
also.

 

Q:               
You didn=t
have the impression that he was the sergeant that could rectify the situation,
did you?

 

A:               
In which manner?

 

Q:               
Well, did you see him as the person who would
take written complaints, or did you see him as an individual with authority to
investigate this matter?

 

A:               
Being knowledgeable of the chain of command, it
was my opinion that I had been led to the correct person to discuss the matter
with.

 

Q:               
And that person told you to fill out these
forms, correct?

 

A:               
I already stated that it was not voluntarily.

 

Q:               
But he eventually gave you the forms?

 

A:               
He eventually gave me the forms, yes, sir.

 

Q:               
Okay.  And
that was the last contact that you personally had with the Department of Public
Safety regarding this matter?

 

A:               
Yes, sir. . . . 
To my knowledge, to my recollection.

 

                                            *  * 
*  *  *

 

Q:               
Let me read to you the portion [of the amended
petition]. . . .  APlaintiff
personally visited with Sergeant Vargas at the DPS in Brownsville and made an
eight-point complaint to Sergeant Vargas.@

 








A:               
That would have been oral situations that I
brought to him, to his attention during the process of the conversation.

 

Q:               
But as you stated, you never gave him anything
in writing or anything like that?

 

A:               
No, sir.

 

Q:               
It=s not
like a written list of complaints?

 

A:               
No. 
Again, the reason that I went to Sergeant Vargas to complain, okay,
primarily was my car, okay?

 

Q:               
I understand.

 

A:               
And I also wanted to show him the
handcuffs.  When B
when you=re a law enforcement officer, you
respect the other person who is doing his job within his jurisdiction.  Nobody should expect favors.  It doesn=t
matter which branch they=re in.

 

Q:               
Understood. 
That=s your position.

 

A:               
And the reason that I saw [my attorney] was
because of the failure to take a breathalyzer, which Trooper Villarreal refused
to give me, and  I had the DWI charge
also.

 

                                            *  * 
*  *  *

 

Q:               
. . . when you came and talked to Sergeant
Vargas, at that point it was just to make a verbal complaint and not give them
any kind of notice that you were going to sue them?

 

A:               
That was the furthest thing away from my mind at
that point.  I was concerned about the
injury to my wrists.  I was concerned
about the fact that I had not been given the breathalyzer, and also, you know,
the DWI that I had been charged with.

 

Q:               
And the state of your car?

 

A:               
The state of my car.

 

The record reflects that Rivera did not file a response to the DPS=s
second plea to the jurisdiction, and did not adduce any evidence in support of
his jurisdictional argument.

                                              F.  Notice








In
order to invoke the waiver of sovereign immunity provided by the TTCA, a
claimant must provide the governmental unit with formal, written notice of the
claim against it within six months of the incident giving rise to the claim;
however, the formal notice requirements do not apply if the governmental unit
has actual notice of the claim.  Tex. Civ. Prac. & Rem. Code Ann. '
101.101 (Vernon 1997).  The purpose of
the notice requirement is to ensure prompt reporting of claims in order to
enable governmental units to gather information necessary to guard against
unfounded claims, settle claims, and prepare for trial.  Cathey v.
Booth, 900 S.W.2d 339, 341 (Tex. 1995); City of Houston v. Torres,
621 S.W.2d 588, 591 (Tex. 1981). Compliance with the notice provisions of the
TTCA is a prerequisite to a waiver of sovereign immunity under the Act.  Kreider, 44
S.W.3d at 263; Brown v. City of Houston, 8 S.W.3d 331, 337 (Tex. App.BWaco
1999, pet. denied); Putthoff v. Ancrum, 934 S.W.2d 164, 173 (Tex. App.BFort
Worth 1996, writ denied).  Accordingly,
failure to give notice under section 101.101 of the TTCA precludes the waiver
of sovereign immunity from suit.  Kreider, 44 S.W.3d at 263; Putthoff,
934 S.W.2d at 174. 








Actual
notice to a governmental unit requires knowledge of:  (1) a death, injury or property damage; (2)
the governmental unit=s alleged
fault producing or contributing to the death, injury or property damage; and
(3) the identity of the parties involved. 
Cathey, 900 S.W.2d at 341.  To have actual notice, the governmental unit
must have the same information it would have had if the claimant had complied
with the formal notice requirements.  Bourne
v. Nueces County Hosp. Dist., 749 S.W.2d 630, 633 (Tex. App.BCorpus
Christi 1988, writ denied).  Mere notice
that an incident has occurred is not enough to establish actual notice for
purposes of the TTCA.  See Putthoff, 934 S.W.2d at 173.  The determination of whether a governmental
unit received actual notice is a question of fact.  Alvarado v. City of Lubbock, 685
S.W.2d 646, 649 (Tex. 1985); Lorig v. City
of Mission, 629 S.W.2d 699, 701 (Tex. 1982).

After
reviewing the record, we hold the trial court did not abuse its discretion in
denying the DPS=s plea to the jurisdiction on the issue
of notice.  Taking Rivera=s
statement as true, it satisfies the three requirements for actual notice as set
forth in Cathey, 900 S.W.2d at 341:  Rivera told Sgt. Vargas (1) about his injury,
(2) about the DPS officers= alleged
fault in producing or contributing to the injury, and (3) the identities of the
parties involved.  See Cathey, 900 S.W.2d at 341.  Furthermore, Rivera=s
statements to Sgt. Vargas sufficed to fulfill the purpose of the notice
requirement B to ensure prompt reporting of claims
in order to enable governmental units to gather information necessary to guard
against unfounded claims, settle claims, and prepare for trial.  See Cathey,
900 S.W.2d at 341 (Tex. 1995); Torres, 621 S.W.2d at 591.  Therefore, we deny the DPS=s
first issue.

                                              G.  Rivera=s Claims

In
its second issue, the DPS contends Rivera=s claims
should be dismissed because he has pleaded only causes of action for
intentional tort and negligent training, and those claims do not fall within
the limited waiver of governmental immunity granted under the TTCA.

                                                1.  Intentional Tort?








In
his first amended petition, Rivera asserted the DPS Ais
responsible for the Acts of Defendants Villarreal and Lopez under the doctrine
of respondeat superior, as Villarreal
and Lopez were acting within the scope of their employment with [DPS].@  Rivera also alleged that the officers had
injured him by their use of handcuffs. 
We conclude that Rivera has invoked the waiver contained in section
101.021 of the TTCA:  AA
governmental unit in the state is liable for . . . personal injury and death so
caused by a condition or use of tangible personal or real property if the
governmental unit would, were it a private person, be liable to the claimant
according to Texas law.@  Tex.
Civ. Prac. & Rem. Code Ann. '
101.021(2) (Vernon 1997).

Rivera
also pleaded that the officers= Agross
negligence and reckless conduct@ had
caused his injuries.  The DPS argues that
Rivera has pleaded only intentional torts by the officers, and that
governmental immunity has not been waived under the TTCA for intentional
torts.  See Tex. Civ. Prac. & Rem. Code Ann. '
101.057(2) (Vernon 1997) (TTCA does not apply to a claim Aarising
out of assault, battery, false imprisonment, or any other intentional tort@).  We disagree that Rivera, as a matter of law,
has pleaded only intentional torts.

We
must construe the plaintiff=s
pleadings liberally in favor of jurisdiction. 
Peek, 779 S.W.2d at 804. 
Rivera=s pleading of gross negligence and
recklessness clearly contemplates a negligence claim, and negligence claims are
cognizable under the TTCA.  See York,
871 S.W.2d at 176 (negligence claims fall under the TTCA); see also City of
Amarillo v. Pruett, 44 S.W.3d 702, 709 (Tex. App.BAmarillo
2001, no pet.) (rejecting the argument that recklessness is the same as gross
negligence).  We, therefore, hold that
Rivera has pleaded a cause of action within the TTCA waiver of governmental
immunity sufficient to withstand the DPS=s plea to
the jurisdiction.

                                 2.  Negligent Training and Supervision?








Rivera
has pleaded that the DPS Awas
negligent in failing to properly train and control Defendants Villarreal and
Lopez.@ 
Thus, we conclude he has asserted causes of action against the DPS for
negligent training and supervision of its officers.  We recognize that the Texas Supreme Court has
held in a recent opinion that a negligent training claim is not cognizable
under the TTCA because it does not involve use of tangible personal
property.  See Tex. Dep=t of Pub.
Safety v. Petta, 44 S.W.3d 575, 580-81 (Tex.
2001) (Awhile instructional manuals can be seen
and touched, the Legislature has not waived immunity for negligence involving
the use, misuse or non-use of the information they contain@).  However, Petta
involved the appeal of the granting of a summary judgment.  See id. at 577.

The
case before us is an interlocutory appeal of the denial of a plea to the
jurisdiction.  When a trial court has
jurisdiction over any claim against a governmental entity, the court should
deny that entity=s plea to the jurisdiction.  Harris County Flood Control Dist. v. PG
& E Tex. Pipeline, L.P., 35 S.W.3d 772, 773 (Tex. App.BHouston
[1st Dist.] 2000, pet. dism=d
w.o.j.); Aledo Indep. Sch. Dist. v. Choctaw Props., L.L.C., 17 S.W.3d 260,
263 (Tex. App.BWaco 2000, no pet.) (Ait
does not serve the legislative purposes for which interlocutory appeals of
pleas to the jurisdiction were allowed to fragment the appeal on less than the
entire case against a defendant@); see
also Speer v. Stover, 685 S.W.2d 22, 23 (Tex. 1985) (sustaining plea to the
jurisdiction requires dismissal of entire case).  Accordingly, we deny the DPS=s
second issue.








Because we have held that Rivera=s negligence claims are within the
TTCA waiver of governmental immunity, we hold the trial court has jurisdiction
over this case.  Therefore, we affirm the
trial court=s order denying the plea to the
jurisdiction of the Texas Department of Public Safety.

 

FEDERICO G. HINOJOSA

Justice

 

Do not publish.  Tex. R. App. P. 47.3.

 

Opinion delivered and filed this the

25th day of April, 2002.

 











[1]
The officers are not parties to this appeal.  We note that the TTCA does not govern suits
brought directly against employees of the State, regardless of the capacity in
which they acted.  Perales
v. Kinney, 891 S.W.2d 731, 733 (Tex. App.BHouston
[1st Dist.] 1994, no writ) (citing Huntsberry
v. Lynaugh, 807 S.W.2d 16, 17 (Tex. App.BTyler
1991, no writ)).  





[2] Rivera=s
original petition is not in the record before us.