Reversed and Rendered and Memorandum Opinion filed June 20, 2006









Reversed and Rendered and Memorandum Opinion filed June 20, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-06-00014-CV

____________

 

UNIVERSITY OF
TEXAS MEDICAL BRANCH, Appellant

 

V.

 

TINESHA T.
THOMPSON,
Appellee

 



 

On Appeal from the 122nd
District Court

Galveston County, Texas

Trial Court Cause No. 05CV0533

 



 

M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from the
trial court=s denial of appellant=s, University of
Texas Medical Branch, plea to the jurisdiction. Appellee, Tinesha T.  Thompson, filed suit against appellant, a
government healthcare provider, for medical malpractice in appellant=s treatment of
appellee=s appendicitis.
Appellant, asserting appellee=s claims do not
invoke the Texas Tort Claims Act=s[1]
limited waiver of sovereign immunity, filed a plea to the jurisdiction, which
the trial court denied. We reverse and render judgment dismissing appellee=s claims for want
of subject-matter jurisdiction.








Factual and
Procedural Background

Appellee visited appellant=s emergency room
on three consecutive days in 2003. 
Appellee complains only about the care she received during the second of
her three visits.  Appellee first visited
the emergency room on April 29, 2003 complaining of abdominal pain, nausea, and
vomiting. She was diagnosed with gastritis and instructed to follow up with her
primary-care physician. According to appellee=s expert, Dr.
Charles Stewart, appellant=s physicians
performed a reasonable evaluation of appellee on this first visit including
appropriate laboratory and radiologic evaluation.

Appellee returned to appellant=s emergency room
the following day, this time by ambulance. Appellee reported a worsening
condition including more vomiting and pain throughout her abdomen. Her
examination revealed a high white-blood-cell count and a rapid heartbeat, but
no additional radiographic studies were obtained. The attending physician
prescribed appellee medication, and ultimately discharged her with instructions
to eat a high-fiber diet, follow-up with a family medicine physician, and
return to the emergency room if her symptoms worsened. Finally, before she was
discharged, appellee was given an injectable form of pain medication that
appellee alleges masked her symptoms.








Appellee=s expert, Dr.
Charles Stewart, believes appellant=s physicians
missed key signs of appellee=s appendicitis on
this second visit to the emergency room. Although Dr. Stewart found no fault
with the laboratory work ordered during this second visit, he opined that a
prudent physician would have requested another imaging study such as an
ultrasound or a CT scan. Dr. Stewart stated that if the emergency room
physician had ordered a CT scan during this second visit to the emergency room,
in all medical likelihood the appendicitis would have been appropriately discovered
during this visit. Dr. Stewart continued that appellant=s inappropriate
evaluation and discharge of appellee during this second visit delayed
appropriate care and administration of antibiotics to decrease the effects of
the ruptured appendix. Dr. Stewart concluded that Aas a direct result
of the . . . failure to adequately examine the [appellee], counsel the resident
about the dangers of the patient who returns within 48 hours, and order
appropriate imaging studies on this [appellee=s] second visit,
the [appellee] did, in fact, suffer an intraabdominal abscess that required
additional hospitalization and procedures.@

On the next day, appellee returned to the
emergency room and following a CT scan, appellant performed an emergency repair
of appellee=s appendix. Dr. Stewart found no fault
with appellant=s treatment of appellee during this third
visit to the emergency room. 

Appellee filed suit against appellant
alleging appellant=s physicians and nurses harmed appellee
by: (1) improperly administering injectable pharmaceuticals thereby masking the
symptoms of appendicitis; (2) improperly permitting appellee=s discharge from
the hospital while she remained in a condition requiring emergency surgical
intervention; and (3) failing to properly evaluate and treat appellee. In a
plea to the jurisdiction, appellant asserted that appellee=s claims do not
invoke the Tort Claims Act=s limited waiver
of sovereign immunity.  In response to
appellant=s plea to the jurisdiction, appellee
asserted that appellant also committed negligence by (1) using x-ray equipment,
because, according to appellee, x-rays are not capable of diagnosing
appendicitis, and (2) misusing diagnostic equipment such as a stethoscope,
blood pressure machines, and thermometers in a way that failed to recognize the
signs and symptoms of appellee=s illness.
Appellee asserted that the tangible personal property used by appellant=s physicians that
invoked the Tort Claims Act=s limited waiver
of immunity were: pain medications, the x-ray machine, and various diagnostic
equipment including a stethoscope, blood pressure machine, and a thermometer.

The trial court denied appellant=s plea to the
jurisdiction and this interlocutory appeal followed pursuant to Tex. Civ. Prac. & Rem. Code Ann. '51.014(a)(8) (Vernon
Supp. 2005).

Discussion

In one issue,
appellant argues appellee=s suit is barred by sovereign immunity.

I. Sovereign Immunity

In Texas, sovereign immunity deprives a
trial court of subject matter jurisdiction for 








lawsuits in which the state or certain governmental
units have been sued unless the state consents to suit. Tex. Dep=t of Parks &
Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004). The Tort Claims Act
provides a limited waiver of sovereign immunity, allowing suits to be brought
against governmental units only in certain, narrowly defined circumstances. Tex. Civ. Prac. & Rem. Code Ann. ' 101.021 (Vernon
2005); Tex. Dep=t of Criminal Justice v. Miller, 51 S.W.3d 583,
587 (Tex. 2001). Thus, appellant is immune from suit unless the Tort Claims Act
expressly waives immunity. Miranda, 133 S.W.3d at 224B25.

The specific Tort Claims Act provision
under which appellee alleges waiver provides 
that a Agovernmental unit in the state is liable
for . . . personal injury and death so caused by a condition or use of tangible
personal or real property if the governmental unit would, were it a private
person, be liable to the claimant according to Texas law.@ Tex. Civ. Prac. & Rem. Code Ann. ' 101.021(2)
(Vernon 2005).

II. Standard of Review

Whether a court has subject matter
jurisdiction is a question of law. Miranda, 133 S.W.3d at 226. Appellate
courts reviewing a challenge to a trial court=s subject matter
jurisdiction review the trial court=s ruling de
novo. Id. at 228. When reviewing a plea to the jurisdiction in which
the pleading requirement has been met and evidence has been submitted to
support the plea that implicates the merits of the case, we take as true all
evidence favorable to the nonmovant. Id. Further, we indulge every
reasonable inference and resolve any doubts in the nonmovant=s favor. Id.  

III. Appellee=s Suit is Barred
by Sovereign Immunity

Appellee=s suit does not
invoke the limited waiver of immunity found in the Tort Claims Act for two
reasons. First, appellee=s allegations do not meet the Tort Claims
Act=s requirement that
tangible state personal property cause appellee=s injury. See
Tex. Civ. Prac. & Rem. Code Ann.
' 101.021(2).
Second, the substance of appellee=s claim is that
appellant failed to timely diagnose and treat appellee=s appendicitis.

 








A. Tangible State Personal Property Did
Not Cause Appellee=s Injury

The Tort Claims Act=s plain language
limits its waiver of sovereign immunity to only those personal injuries caused
by a condition or use of tangible personal or real property. Id. The
mere involvement of property in circumstances leading to an injury is
insufficient to meet this causation requirement. Dallas County Mental Health
& Mental Retardation v. Bossley, 968 S.W.2d 339, 342B43 (Tex. 1998).
Instead, the property must be the instrumentality of the harm. Robinson v.
Univ. of Tex. Med. Branch at Galveston, 171 S.W.3d 365, 369 (Tex. App.CHouston [14th
Dist.] 2005, no pet.). In Miller, a case with remarkably similar facts,
the plaintiff sued the state alleging that her husband=s government
employed doctor invoked the Tort Claims Act=s waiver of
immunity by prescribing drugs that masked his symptoms and misusing diagnostic
tools in such a way that the doctor failed to timely diagnose his meningitis. Miller,
51 S.W.3d at 587. The Texas Supreme Court held that the use of property alleged
by the plaintiff did not invoke the Tort Claims Act=s waiver of
immunity.  Id. at 588. The supreme
court continued that mere involvement of tangible personal property in the
treatment is not enough to waive immunity; instead, that property must have
actually caused the injury. Id. Because it did not, there was no waiver
of sovereign immunity. Id. at 589.

In the case at bar, appellee alleges she
was given symptom-masking drugs and the appellant=s emergency room
personnel did not properly use medical diagnostic tools to timely diagnose her
appendicitis.[2]
These allegations do not meet the Tort Claims Act=s causation
requirement because none of the property involved in appellee=s medical
treatment actually harmed appellee.








B. Appellee=s True Complaint,
that Appellant Failed to Timely Diagnose and Treat Her Appendicitis, Does Not
Waive Immunity

In determining whether sovereign immunity
has been waived, courts look to the real substance of a plaintiff=s cause of action,
not the plaintiff=s characterization of her claims. See,
e.g., Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540, 543
(Tex. 2003); Bossley, 968 S.W.2d at 343. Here, the real substance of
appellee=s suit is that
appellant=s emergency room medical staff failed to
timely detect and treat appellee=s appendicitis and
these failures resulted in pain and injury that would not have occurred if she
had been timely and properly diagnosed and treated. However, a state entity=s failure to act
does not invoke the Tort Claims Act=s limited waiver
of immunity. See Kassen v. Hatley, 887 S.W.2d 4, 14 (Tex. 1994). As the
real substance of appellee=s cause of action
is a failure to act, appellee=s suit does not
invoke the Tort Claims Act=s waiver of
immunity.

Conclusion

We sustain appellant=s issue and
reverse the trial court=s denial of appellant=s plea to the
jurisdiction and render judgment dismissing appellee=s suit for want of
subject-matter jurisdiction.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed June 20, 2006.

Panel
consists of Justices Anderson, Edelman, and Frost.

 

 











[1]  Tex. Civ. Prac. & Rem. Code Ann. ' 101.021 (Vernon 2005)





[2]  It is
significant that, in his expert report, Dr. Stewart does not make reference to
the drugs administered to appellee or to any alleged misuse of medical
diagnostic tools as the cause of appellee=s
injury. Instead, Dr. Stewart concluded it was appellant=s inadequate examination of appellee, inappropriate
evaluation of appellee=s condition, the failure to order appropriate imaging
studies of appellee, and appellant=s
premature discharge of appellee during appellee=s second
visit as the factors that caused appellee=s
injury. Dr. Stewart=s report clearly reflects the absence of any basis for
a claim by appellee that the use of tangible personal property caused her
injury.