COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





TEXAS TECH UNIVERSITY HEALTH
SCIENCE CENTER,

                                    Appellant,

v.

LISA JACKSON,

                                    Appellee. 

§
 
§
 
§
 
§
 
§

§


No. 08-10-00363-CV

Appeal from
 210th District Court

of El Paso County, Texas

(TC # 2010-2817)



 

 

 




O P I N I O N

            This is an interlocutory appeal from the trial court’s denial of a plea to the jurisdiction. Lisa
Jackson brought suit against Texas Tech University Health Science Center (TTUHSC) alleging the
medical negligence of one of its employees, Dr. Neil Adams. Specifically, Jackson alleged that: 
“Dr. Neil Adams, in the course and scope of his employment with Texas Tech University Health
Science Center Opthamology Clinic, was negligent for applying a ‘bandage contact’ over [Jackson’s]
injured eye rather than obtaining prompt surgical intervention” for a penetrating eye injury Jackson
sustained while sewing in hair extensions. TTUHSC filed an original answer which included a plea
to the jurisdiction, complaining that Jackson’s claims do not fall within the Texas Tort Claims Act’s
limited waiver of sovereign immunity. The trial court denied the motion and this interlocutory
appeal follows. See Tex.Civ.Prac.&Rem.Code Ann. § 51.014(a)(8)(West 2008). We reverse.
FACTUAL SUMMARY
            On June 1, 2009, Lisa Jackson suffered a penetrating eye injury while attempting to affix hair
extensions. According to her petition, she promptly sought care at Sierra Medical Center’s
emergency room. The medical records indicate Jackson reported she was injured by “sewing ‘hair
in head’ when the thick string snapped and hit patient in left eye.” The emergency room physician
transferred Jackson to Thomason Hospital with a diagnosis of “Eye Contusion; Retinal Detachment;
Corneal Abrasion.” Jackson was transferred via ambulance. After the physician at Thomason
examined her injuries, she was discharged with instructions to go directly to the Texas Tech Health
Science Center Opthamology Clinic. At the Clinic, Jackson was seen by Dr. Neil Adams who noted
that a rubberband snapped and hit Jackson in the eye. Jackson had a corneal laceration and Dr.
Adams discussed with her the risk of corneal scarring should they suture the cornea immediately. 
He recommended a bandage contact lens to allow natural healing of the cornea until it was stronger. 
Because Jackson wanted to return to her home in Las Vegas as planned, Dr. Adams scheduled an
appointment for her with Dr. Kent Wellish for examination and surgery in Las Vegas the following
day. He directed that the bandage contact lens be placed on the injured eye, ordered strict bed rest, 
the use of an eye shield, and prescribed pain medication and antibiotic drops to fight infection.
            At approximately 10:25 p.m. that same night, Jackson returned to Thomason Hospital
complaining of decreased vision. She reported having been to the hospital earlier that day due to a
“needle punctur[ing] her cornea.” [Emphasis added]. This is the first mention of a needle. The
emergency room physician contacted Dr. Adams and was informed of Jackson’s upcoming
appointment in Las Vegas. Jackson was prescribed Vicodin and Benedryl and then discharged. 
            On June 2, Jackson returned to Las Vegas but instead of attending her scheduled appointment
with Dr. Wellish, she went to the emergency room at Summerlin Hospital. These medical records
reflect that her injury was the result of accidentally sticking a needle in her eye. The emergency
physician diagnosed a probable penetrating globe injury, noted pus draining from the injury, and
administered antibiotics. The doctor then reapplied the eye patch and referred Jackson to Sunrise
Medical Center. 
            Jackson arrived at Sunrise Medical Center by ambulance and was seen by Dr. Edward Yee. 
Dr. Yee performed a suture repair of the corneal laceration, placed Jackson on antibiotics, diagnosed
an eye infection, and referred her to Retina Consultants of Nevada.
            On June 3, Jackson consulted with Dr. Roy Loo at Retina Consultants. The CT orbits and
x-ray revealed the presence of a foreign object in the eye. That same day, Dr. Loo performed surgery
and treated the infection, but his attempt to remove the foreign object was unsuccessful. During this
surgery, the corneal wound was compromised and Dr. Loo had to place additional sutures in the
cornea “to ensure a watertight seal.” 
            On June 12, Jackson returned to Sunrise Medical Center where Dr. Yee performed a corneal
transplant. His pre-surgery notes identify a needle penetrating the left eye causing an infection in the
cornea. On June 16, Dr. Loo performed a second surgery to remove the needle fragment. This
surgery was successful. Antibiotics were again administered to treat the infection. Unfortunately,
Jackson’s vision did not return and eventually her left eye was removed and replaced with a
prosthetic. 
            Jackson brought this suit against TTUHSC alleging that Dr. Adams, in the course and scope
of his employment, was negligent in applying the bandage contact lens rather than pursuing prompt
surgical intervention. She also alleged that his negligence was a proximate cause of her injuries,
including the development of an eye infection, the development of blindness, and the need for
removal of the eye and replacement of the eye with a prosthetic device. She maintained that her claim
fell within the limited waiver of sovereign immunity provided in Section 101.021(2) of the Texas Tort
Claims Act because Dr. Adams’ use of the bandage contact constituted a “use” of tangible personal
property resulting in injury. 
            TTUHSC filed an answer and plea to the jurisdiction alleging the trial court lacked subject-matter jurisdiction based on sovereign immunity. It complained that not only did Jackson’s pleadings
fail to allege a waiver, the medical records conclusively established that her injury was not caused by
any use of tangible personal property. The trial court denied the motion after a hearing and this
appeal follows. 
STANDARD OF REVIEW
            A plea to the jurisdiction is a dilatory plea by which a party challenges the court’s authority
to determine the subject matter of the action. Bland Independent School Dist. v. Blue, 34 S.W.3d 547,
554 (Tex. 2000); see Texas Department of Transp. v. Jones, 8 S.W.3d 636, 637-38 (Tex. 1999); Texas
Tech University Health Sciences Center v. Mendoza, No. 08-01-00061-CV, 2003 WL 1359549, at
*1 (Tex.App.--El Paso March 20, 2003, pet. denied)(mem. op.); City of Midland v. Sullivan, 33
S.W.3d 1, 6 (Tex.App.--El Paso 2000, pet. dism’d w.o.j). The plaintiff bears the burden to allege
facts affirmatively proving that the trial court has subject matter jurisdiction. Texas Dept. of Criminal
Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2001); Texas Ass’n of Business v. Texas Air Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993). The existence of subject matter jurisdiction is a question of law. 
State Dept. of Highways and Public Transp. v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002). We
review de novo the trial court’s ruling on a plea to the jurisdiction. Mendoza, 2003 WL 1359549, at
*1; City of Midland, 33 S.W.3d at 6-7.
            In considering a plea to the jurisdiction, a court may not weigh the merits but must consider
only the plaintiff’s pleadings and the evidence pertinent to the jurisdictional inquiry. County of
Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002), citing Texas Natural Reasource Conservation
Com’n v. White, 46 S.W.3d 864, 868 (Tex. 2001) and Bland Independent School Dist., 34 S.W.3d at
554-55. On appeal, we may consider the pleadings, assertions of fact, and any evidence submitted
which is relevant to the jurisdictional issue. Miller, 51 S.W.3d at 587. We construe a plaintiff’s
pleadings liberally. Texas Dept. of Transp. v. Ramirez, 74 S.W.3d 864, 867 (Tex. 2002); Texas Ass’n
of Business, 852 S.W.2d at 446; Arnold v. University of Texas Southwestern Medical Center at
Dallas, 279 S.W.3d 464, 467 (Tex.App.--Dallas 2009, no pet.). We must construe pleadings in favor
of jurisdiction unless the petition, on its face, affirmatively demonstrates a lack of jurisdiction. 
Arnold, 279 S.W.3d at 467. Finally, we take as true all evidence favorable to the nonmovant,
indulging every reasonably inference and resolving any doubts in the nonmovant’s favor. Texas Dept.
of Parks and Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004). 
            Because Jackson’s pleadings allege a claim falling within a limited waiver of sovereign
immunity, we must first look to the terms of the Act and determine the scope of the waiver. See
Kerrville State Hospital v. Clark, 923 S.W.2d 582, 584 (Tex. 1996); Mendoza, 2003 WL 1359549,
at *2. Second, we must consider the particular facts of the case to determine whether it falls within
that scope. Miller, 51 S.W.3d at 587. 
SOVEREIGN IMMUNITY UNDER THE TEXAS TORT CLAIMS ACT
            To sue a governmental unit for a tort, the pleadings must state a claim under the Texas Tort
Claims Act. Jones, 8 S.W.3d at 639; Mendoza, 2003 WL 1359549, at *1. It is undisputed that
TTUHSC is a governmental unit entitled to the protections of sovereign immunity. Sovereign
immunity protects a governmental unit from lawsuits for damages by depriving the trial court of
subject matter jurisdiction absent the State’s consent. Miranda, 133 S.W.3d at 224, 225; University
of Texas Medical Branch at Galveston v. Malveaux, No. 14-09-00878-CV, 2010 WL 2968021, at *1
(Tex.App.--Houston [14th Dist.] July 29, 2010, pet. denied). When a claim is barred by sovereign
immunity, the trial court lacks subject matter jurisdiction and a dismissal with prejudice is proper. 
Id. 
Waiver of Sovereign Immunity Under Section 101.021
            The Act provides a limited waiver of sovereign immunity only in certain, narrowly defined
circumstances. Miller, 51 S.W.3d at 587. The specific provision under which Jackson alleges a
waiver of sovereign immunity provides that: 
A governmental unit in the state is liable for:
 
. . .
 
(2) personal injury and death so caused by a condition or use of tangible personal or
real property if the governmental unit would, were it a private person, be liable to the
claimant according to Texas law.
 
Tex.Civ.Prac.&Rem.Code Ann. § 101.021(2)(West 2011). Where, as here, the claim does not
involve a use of defective property, a plaintiff must allege a government employee used or misused
the tangible personal property. Lacy v. Rusk State Hosp., 31 S.W.3d 625, 629 (Tex.App.--Tyler 2000,
no pet.). “Use” has been defined as “to put or bring into action or service; to employ for or apply to
a given purpose.” White, 46 S.W.3d at 869, citing Mount Pleasant Independent School Dist. v. Estate
of Lindburg By and Through Lindburg, 766 S.W.2d 208, 211 (Tex. 1989). At a hearing on a plea to
the jurisdiction, the burden is on the governmental unit to show the employee’s actions did not
constitute a use of tangible property. See Austin Independent School Dist. v. Guitierrez, 54 S.W.3d
860, 863 (Tex.App.--Austin 2001, pet. denied). 
            However, mere involvement of tangible personal property in an injury will not, in and of itself,
waive liability. Dallas County Mental Health and Mental Retardation v. Bossley, 968 S.W.2d 339,
342-43 (Tex. 1998), cert. denied, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d. 450 (1998). A plaintiff
must also prove the injury was proximately caused by the use of the property. See Tex.Civ.Prac.&
Rem.Code Ann. § 102.021(2); Bossley, 968 S.W.2d at 343; City of Midland, 33 S.W.3d at 7. To
establish causation, the use of property must do more than just furnish the condition which makes the
injury possible. Bossley, 968 S.W.2d at 343. A plaintiff must show that the tangible personal
property was the instrumentality of harm. See id.; Batson v. City of Port Isabel, 49 S.W.3d 425, 429
n.4 (Tex.App.--Corpus Christi 2001, pet. denied).
Adequacy of Pleading
            TTUHSC asserts in a single issue that the trial court erred in denying its plea to the
jurisdiction because Jackson failed to plead or prove facts sufficient to trigger an abdication of
sovereign immunity under the Texas Tort Claims Act. Consistent with the arguments contained in
its plea to the jurisdiction, the issue for review is comprised of three main contentions. First, it argues
generally that Jackson’s petition is insufficient to plead a waiver of sovereign immunity. Second, it
alleges that Jackson’s pleadings assert, at most, a claim for negligent medical judgment which does
not waive sovereign immunity. Finally, it argues that the evidence proves Jackson herself caused the
injury. 
            When sovereign immunity is at issue, a mere reference to the Act is insufficient to waive
immunity or confer jurisdiction on the trial court. Miller, 51 S.W.3d at 587. A plaintiff must allege: 
(1) a use of tangible personal property by a governmental unit (2) that causes personal injury or death. 
Tex.Civ.Prac.&Rem.Code Ann. § 101.021(2).
            We turn first to Jackson’s pleading: 
Dr. Neil Adams, in the course and scope of his employment with the Texas Tech
University Health Science Center Opthamology Clinic, was negligent for applying a
‘bandage contact’ over the injured eye rather than obtaining prompt surgical
intervention for the patient’s injuries. This negligence was a proximate cause of
[Ms. Jackson’s] injuries, including the development of an eye infection called
endophthalmitis, development of blindness, and need for removal of the eye and
replacement of the eye with a prosthetic device. [Emphasis added].
 
            While the failure to use (non-use) of property does not waive sovereign immunity, the use or
misuse of property does. Texas Dept. of Criminal Justice v. Miller, 51 S.W.3d 583, 587-88 (Tex.
2001). Jackson alleges that the bandage contact lens ordered by Dr. Adams constitutes the use of
tangible property. That may well be true. But there is no allegation, and no evidence, that the use or
misuse of the lens caused her injuries. 
            By the Act’s plain language, the waiver of sovereign immunity is limited to only those
personal injuries proximately caused by a condition or use of tangible or real personal property. 
Tex.Civ.Prac.&Rem.Code Ann. § 101.021(2). “Proximate cause consists of both cause in fact and
foreseeability.” See Mendoza, 2003 WL 1359549, at *4. “Cause in fact” means Dr. Adams’ use of
the tangible personal property was a substantial factor in bringing about the injury. See id. The mere
involvement of tangible personal property in the events leading to the injury is insufficient to meet
the causation requirement. Bossley, 968 S.W.2d at 342-43. Instead, the property must be the
instrumentality of harm. Robinson v. University of Texas Medical Branch at Galveston, 171 S.W.3d
365, 369 (Tex.App.--Houston [14th Dist.] 2005, no pet.). 
            At the hearing on the plea to the jurisdiction, Jackson’s counsel relied heavily upon Texas
Dept. of Criminal Justice v. Miller, 51 S.W.3d 583 (Tex. 2001). There, an inmate’s wife brought suit
against the Texas Department of Criminal Justice (TDCJ) following her husband’s death from
meningitis while incarcerated. Miller, 51 S.W.3d at 585. More specifically, Miller alleged that the
employee doctor of TDCJ invoked the Act’s waiver of immunity because he prescribed drugs which
masked her husband’s symptoms and he misused diagnostic tools so as to prevent a timely diagnosis. 
Id. at 585, 587. The TDCJ filed a plea to the jurisdiction arguing, in part, that Miller failed to
establish a waiver of sovereign immunity because she failed to properly plead an injury caused by the
use of tangible personal property. Id. at 585-86. The trial court denied the plea and the court of
appeals affirmed. Id. at 586. The Texas Supreme Court then granted the petition for review. Id. It
held that the use of property as alleged did not invoke the waiver of immunity. Id. at 589. “Mere
reference to the Tort Claims Act does not establish the state’s consent to be sued and thus is not
enough to confer jurisdiction on the trial court.” The property must have caused the injury. Id. at
587-88. Because it did not, the court reversed. Id. at 589. 
            Jackson’s pleadings are insufficient to waive immunity. She does not allege that Dr. Adams
misused the contact lens, she does not allege that the lens was defective, nor does she plead any facts
which link the application of the contact lens to the eventual removal of her eye. Nothing ties the
tangible personal property to the injury. There isn’t even an allegation that the contact lens somehow
caused her condition to worsen. Simply stated, her complaint is that Dr. Adams was negligent in his
treatment because he recommended a lens and not immediate surgical intervention. See University
of Texas Medical Branch at Galveston v. Malveaux, No. 14-09-00878-CV, 2010 WL 2968021, at *1
(Tex.App.--Houston [14th Dist.] July 29, 2010, pet. denied)(holding plaintiffs failed to plead
sufficient factual allegations that the use or misuse of property caused the injuries, and no evidence
established a causal connection between the use or misuse of the property and the harm, and noting
that not every case invokes the Tort Claims Act because if it did a patient’s complaint that a different
form of treatment would have been more effective, “would always succeed so long as the offending
doctor used some form of tangible property”). 
            When considering a plea to the jurisdiction, a court is not required to look solely to the
pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issue
raised. See Bland Indep. Sch. Dist., 34 S.W.3d at 555. The record reflects that Dr. Adams warned
Jackson of the risks of immediately suturing the cornea, placed the bandage contact on the eye, and
scheduled an appointment with a retinal specialist the following day. There is no allegation that the
contact lens was misused, that there were any complications from the application of the lens, or
anything else which would indicate the lens actually caused Jackson caused the infection and led to
the removal of her eye. Instead, it is undisputed that Jackson herself caused the injury when she
accidently pierced her eye with a needle and the needle broke. It is also undisputed that bacteria from
that needle led to an infection in Jackson’s eye and ultimately to the removal of the eye and
replacement with a prosthetic. We thus conclude that Jackson’s allegations fail to meet the causation
requirement because the tangible personal property involved--the bandage contact lens--did not injure
Jackson. See Miller, 51 S.W.3d at 585; Malveaux, 2010 WL 2968021, at *7. 
Negligent Medical Judgment
            Second, TTUHSC contends that Jackson’s complaint is really one of negligent medical
judgment which does not fall within the waiver of sovereign immunity. In determining whether
sovereign immunity has been waived, we must look beyond a plaintiff’s characterization of her claims
and analyze the real substance of a plaintiff’s cause of action. Dallas Area Rapid Transit v. Whitley,
104 S.W.3d 540, 543 (Tex. 2003); Bossley, 968 S.W.2d at 343. Jackson’s pleadings allege that Dr.
Adams was negligent for applying a bandage contact over the injured eye instead of obtaining prompt
surgical intervention. As the Supreme Court noted in Miller, the inmate’s meningitis became
progressively worse due to the passage of time and an alleged error in medical judgment. There was
no evidence that any defendant’s acts hastened or exacerbated his decline. Miller, 51 S.W.3d at 585;
see also Arnold, 279 S.W.3d at 470 (any damages from the larger breast implants were caused by the
alleged negligence of the physician in using his medical judgment; errors in medical judgment do not
provide waiver of immunity under the Tort Claims Act); Malveaux, 2010 WL 2968021, at *1, *5 (the
decision to perform breast-reduction surgery on the irradiated tissue of Mrs. Malveaux’s right breast
did not involve the use of tangible property; the decision to operate is an alleged error in medical
judgment by the doctor and an error in medical judgment is not within the waiver of immunity).
            The real substance of Jackson’s cause of action is Dr. Adam’s failure to act. As such, her
claim does not fall within the Act’s waiver of immunity. See University of Texas Medical Branch v.
Thompson, No. 14-06-00014-CV, 2006 WL 1675401, at *4 (Tex.App.--Houston [14th Dist.] June
20, 2006, no pet.). We sustain the sole point. We reverse and render judgment dismissing with
prejudice Jackson’s suit for want of subject-matter jurisdiction. 
 
 
September 21, 2011                                                    
                                                                                    ANN CRAWFORD McCLURE, Justice
 
Before Chew, C.J., McClure, and Rivera, JJ.